## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ERICK FIELDS and URSULA PEPIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 12 CV 1306 |
| | ) | |
| | ) | Judge |
| The CITY OF CHICAGO, Illinois, a municipal | ) | |
| corporation, and Chicago Police Officers | ) | Magistrate Judge |
| PETAIN NAVEZ (#19113), JOSE LOMELI | ) | |
| (#19363), STEVEN RIVERA (#15920), | ) | |
| MANUEL GUZMAN (#9798), ROGELIO | ) | |
| PINAL (#18585), ROBERT CAVAIANI | ) | JURY DEMAND |
| (#12062), BRIAN SPRENG (#5688), MICHAEL | ) | |
| GRAF (#11571), MICHAEL BURKE (#4359), | ) | |
| NICHOLAS ORLANDO (#12756), FRANK | ) | |
| PIERRI (#2550), KENNETH BARNAS (#70), | ) | |
| BRIAN TEDESCHI (#20243), ALBERT | ) | |
| PEREZ (#20733), DONALD FALK (#20409), | ) | |
| ANTHONY NORADIN (#21252), RONALD | ) | |
| BANAS (#21007) and other UNKNOWN | ) | |
| CHICAGO POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiffs, ERICK FIELDS and URSULA PEPIN, through their attorney, Torreya L. Hamilton, of The Hamilton Law Office, LLC, make the following complaint against Defendants The CITY OF CHICAGO ("Defendant CITY") and Chicago Police Officers PETAIN NAVEZ, JOSE LOMELI, STEVEN RIVERA, MANUEL GUZMAN, ROGELIO PINAL, ROBERT CAVAIANI, BRIAN SPRENG, MICHAEL GRAF, MICHAEL BURKE, NICHOLAS ORLANDO, FRANK PIERRI, KENNETH BARNAS, BRIAN TEDESCHI, ALBERT PEREZ, DONALD FALK, ANTHONY NORADIN, RONALD BANAS, and UNKNOWN CHICAGO POLICE OFFICERS ("Defendant OFFICERS"):

## JURISDICTION AND VENUE

1. This is an action brought pursuant to 42 U.S.C. §1983 to address the deprivation, under color of law, of the Plaintiffs' rights under the United States Constitution and under the common law of Illinois.

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred within this district.

## PARTIES

4. Plaintiff FIELDS is a thirty-one year old small business owner and a life-long resident of Chicago, Illinois.

5. Plaintiff PEPIN is a thirty-five year old lab technician and also a life-long resident of Chicago, Illinois.

6. At all relevant times, Defendant OFFICERS were Chicago police officers, employed by the Defendant CITY, and were acting within the scope of their employment, under the color of law.

7. Defendant CITY is a municipal corporation, duly incorporated under the laws of the State of Illinois, and at all relevant times, was the employer and principal of Defendant OFFICERS.

## FACTS

8. Plaintiff FIELDS and PEPIN have been together for eight years and they live in a single family home owned by Plaintiff FIELDS, located at 2210 North Keystone, in Chicago, Illinois.

9. Plaintiffs' home sits on a double lot, which is surrounded on all sides by a tall wooden fence.

10. In the back of Plaintiffs' property they have a detached two-car garage. Plaintiffs' garage opens via an overhead door into an alley behind Plaintiffs' home. Their garage also has a side door which opens into their back yard well inside the fence.

### Police Officers Shoot Plaintiff FIELDS In The Stomach While He Is Working On His Own Car In His Own Garage

11. On the evening of February 24, 2011, around 8:00 p.m., Plaintiff PEPIN was inside the house and Plaintiff FIELDS was in the garage removing a license plate from one of his cars.

12. Plaintiff FIELDS was using a small, ten-millimeter socket wrench to remove his license plate, and he had a wrench set open on the floor of the garage next to the car.

13. The overhead door to the garage was closed and the garage was well lit so that Plaintiff FIELDS could see what he was doing as he worked on his car.

14. Unbeknownst to Plaintiff FIELDS, Defendants NAVEZ and LOMELI entered Plaintiffs' backyard with their guns drawn, and quietly made their way to the side door of Plaintiffs' garage.

15. Hearing footfalls in his backyard, Plaintiff FIELDS stood up to investigate.

16. Defendant NAVEZ entered Plaintiffs' garage holding a handgun with Defendant LOMELI one to two feet behind him.

17. Without provocation, Defendant NAVEZ shot Plaintiff FIELDS in the abdomen.

18. The bullet from Defendant NAVEZ's gun pierced Plaintiff FIELDS' liver and exited the right side of his body.

19. Plaintiff FIELDS fell immediately to the ground asking, "Why did you shoot me?" or words to that effect.

20. Instead of administering first aid or calling for an ambulance immediately, Defendant NAVEZ swore, and then turned and left the garage.

### The Shooter And His Fellow Officers Discuss What To Do Next Instead Of Immediately Calling For An Ambulance

21. Defendants RIVERA, GUZMAN, and PINAL were the first officers to arrive on the scene either before, or just after, Defendant NAVEZ shot Plaintiff FIELDS. On information and belief,

these officers conferred with NAVEZ and LOMELI outside the garage, while Plaintiff FIELDS lay bleeding on the ground inside the garage.

22. Defendant NAVEZ returned to the garage and searched Plaintiff FIELDS, finding him unarmed. Defendant NAVEZ then left the garage again, leaving Plaintiff FIELDS lying on the ground, bleeding.

23. On information and belief, Defendants NAVEZ, LOMELI, RIVERA, GUZMAN and PINAL delayed making a call for emergency assistance for Plaintiff FIELDS while they considered what to do.

### Plaintiff PEPIN Is Physically Removed From Her Own Property While Plaintiff FIELDS Calls For Help

24. Meanwhile, Plaintiff PEPIN, looked out her window and saw several police officers in her backyard talking with each other near the garage.

25. Plaintiff PEPIN went outside in her pajamas to see what was happening, and was met by Defendant OFFICERS who refused to let her into her garage, and refused to tell her what had happened.

26. When Plaintiff PEPIN attempted to walk towards her own garage Defendant OFFICERS prevented her from entering.

27. One of Defendant OFFICERS then physically removed Plaintiff PEPIN from her own property depositing her in the alley and causing a bruise on her upper arm.

28. Meanwhile, alone inside the garage and afraid he was dying, Plaintiff FIELDS used his cell phone to call Plaintiff PEPIN. When she did not answer (because she was already outside), Plaintiff FIELDS called his mother and told her the police had just shot him and he needed help.

29. While Plaintiff FIELDS was on the phone with his mother, Defendant LOMELI entered the garage and took his phone away from him, terminating his call with his mother.

30. On information and belief, only after Plaintiff FIELDS was observed talking on his cell phone, did one of the Defendant OFFICERS summon an ambulance for him.

31. One or more of Defendant OFFICERS then opened the overhead door of the garage, allowing Plaintiff PEPIN to see, from her position in the alley, that Plaintiff FIELDS was lying on the floor of the garage with three police officers standing over him.

32. One of the Defendant OFFICERS told Plaintiff PEPIN that Plaintiff FIELDS was fine and could get up and walk if he wanted to, but he just chose not to, or words to that effect.

33. When an ambulance arrived on the scene, it could not get close to Plaintiff FIELDS because police cars were blocking the alley.

34. Defendant OFFICERS did not allow the ambulance personnel into the garage where Defendant NAVEZ had shot Plaintiff FIELDS. Instead, Defendant OFFICERS carried him out of the garage.

**Plaintiff PEPIN Is Detained in A Squad Car While Chicago Police Officers Ransack Plaintiffs' Home Looking For Something To Justify The Shooting**

35. While refusing to answer Plaintiff PEPIN's questions, Defendants TEDESCHI and PEREZ led Plaintiff PEPIN away from her home and put her into a squad car. These Defendants interrogated Plaintiff PEPIN and then caused her to be detained inside the squad car against her will for more than two hours.

36. While Plaintiff PEPIN was forcibly kept away from her home, UNKNOWN OFFICERS entered and searched Plaintiffs' home without a search warrant or any other legal justification to do so.

37. On information and belief, during the approximately three to four hours following the shooting, as many as seventy-five Chicago police officers, and perhaps more, were either inside or outside Plaintiffs' home and/or garage at various times.

5

38. UNKNOWN OFFICERS conducted an exhaustive search of Plaintiffs' home. They searched storage boxes, drawers and cabinets, and the pockets of clothing, which was hanging in closets. UNKNOWN OFFICERS even removed insulation and pieces of drywall to look inside the walls of Plaintiffs' home.

39. On information and belief, Defendants PIERRI and BARNAS were two of the supervisors directing the investigation that night, and they were aware of, and condoned, the search of Plaintiffs' home without a search warrant or probable cause.

40. Defendant PIERRI and BARNAS also authorized the use of a Chicago Police Department canine unit to search the inside of Plaintiffs' home and garage.

41. There was nothing illegal in either Plaintiffs' home or their garage.

42. During this illegal search, UNKNOWN OFFICERS stole United States' currency from the pocket of shirt hanging in Plaintiffs' bedroom closet.

43. During this illegal search, UNKNOWN OFFICERS also stole expensive food items from a freezer in Plaintiffs' basement, including packages of jumbo shrimp and filet mignon.

44. After being held in a squad car against her will for more than two hours, Plaintiff PEPIN was finally escorted back to her home by three police officers.

45. As they arrived at her front door, one of the Defendant OFFICERS informed Plaintiff PEPIN for the first time, that Plaintiff FIELDS had been shot, but they did not tell her a police officer shot him.

46. Plaintiff PEPIN returned to her home and discovered it had been thoroughly searched and was in total disarray.

**Plaintiff FIELDS Fights For His Life And Both Plaintiffs Suffer Emotionally**

47. Plaintiff FIELDS, was rushed into surgery that night in an attempt to repair the damage done by the bullet fired from DEFENDANT Navez's gun. During surgery, approximately 90 percent of Plaintiff FIELDS' liver had to be removed due to damage from the bullet.

48. Plaintiff FIELDS required multiple blood transfusions to replace the blood he lost on the floor of his garage and during surgery.

49. Sometime that night, Defendants FALK, NORADIN and BANAS questioned Plaintiff FIELDS while he was still in the emergency room and later conveyed false information about this interview to other detectives.

50. Plaintiff FIELDS was gravely ill for several weeks and remained in the hospital for nearly a month.

51. When Plaintiff FIELDS was finally released from the hospital, he left with several holes in his torso, which operated as drains.

52. Plaintiff FIELDS subsequently developed a severe infection and had to return to the hospital for a week in order to treat the infection.

53. Upon his release the second time, Plaintiff FIELDS had to self-administer intravenous antibiotics for several weeks.

54. Plaintiff FIELDS has lost 30-40 pounds as a result of his injuries and he has been unable to gain it back.

55. Defendant NAVEZ and LOMELI caused Plaintiff FIELDS to suffer severe pain as well as long-term disability and permanent disfigurement.

56. As a result of Defendant OFFICERS' misconduct, Plaintiff FIELDS has suffered serious emotional damages, and he will continue to suffer indefinitely, both physically and emotionally.

57. Plaintiff FIELDS has hundreds of thousands of dollars of medical bills and this debt has affected his credit and his financial stability.

58. Plaintiff PEPIN has also suffered physical and emotional damages, including anxiety, as a result of Defendant OFFICERS' actions.

## COUNT I
(42 U.S.C. § 1983 - Excessive Force- Plaintiff FIELDS)

59. Each of the foregoing paragraphs is incorporated as if fully restated here.

60. As described above, the intentional conduct of the Defendant NAVEZ and LOMELI toward Plaintiff FIELDS was objectively unreasonable under the circumstances, and thus constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

61. Defendant LOMELI was aware of the misconduct of his fellow police officer, had a reasonable opportunity to intervene to prevent the misconduct and the damages suffered by Plaintiff FIELDS, but failed to do so.

62. As a direct and proximate result of the Defendant NAVEZ and LOMELI's excessive use of force, Plaintiff FIELDS suffered both physical and emotional damages, which will be proven at trial.

**WHEREFORE,** Plaintiff FIELDS prays for a judgment against Defendants NAVEZ and LOMELI in a fair and just amount sufficient to compensate Plaintiff FIELDS for the severe injuries he has suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

## COUNT II
(42 U.S.C. § 1983 – Failure To Provide Timely Medical Care - Plaintiff FIELDS)

63. Each of the foregoing paragraphs is incorporated as if fully restated here.

64. Defendants NAVEZ, LOMELI, RIVERA, GUZMAN and PINAL's failure to immediately call for an ambulance for Plaintiff FIELDS, and their failure to allow the paramedics immediate

8

access to Plaintiff FIELDS in the garage, were objectively unreasonable under the circumstances, in violation of the Fourth Amendment to the United States' Constitution.

65. Defendant OFFICERS failure to provide timely medical care to Plaintiff FILEDS proximately resulted in additional physical and emotional harm to Plaintiff FIELDS.

66. As a direct and proximate result of Defendant OFFICERS' acts or omissions, Plaintiff FIELDS suffered severe physical, emotional and financial damages, which will be proven at trial.

**WHEREFORE,** Plaintiff FIELDS prays for a judgment against Defendants NAVEZ, LOMELI, RIVERA, GUZMAN, and PINAL, in a fair and just amount sufficient to compensate Plaintiff FIELDS for the severe injuries he has suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

### COUNT III
(42 U.S.C. § 1983 --Unlawful Seizure – Plaintiff PEPIN)

67. Each of the foregoing paragraphs is incorporated as if fully restated here.

68. As described above, one or more of Defendant OFFICERS and Defendants TEDESCHI and PEREZ unlawfully detained Plaintiff PEPIN, or caused her to be unlawfully detained, without a warrant, probable cause, and without any other legal justification to do so. These Defendant OFFICERS' actions were objectively unreasonable and in violation of the Fourth Amendment to the United States Constitution.

69. One or more of Defendant OFFICERS were aware of the misconduct of his fellow police officers, had a reasonable opportunity to intervene to prevent their misconduct and the damages suffered by Plaintiff PEPIN, but failed to do so.

70. As a direct and proximate result of this unlawful search and seizure, Plaintiff PEPIN suffered damages, including both physical and emotional damages, which will be proven at trial.

**WHEREFORE**, Plaintiff PEPIN prays for a judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate Plaintiff PEPIN for the injuries she has suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

### COUNT IV
(42 U.S.C. § 1983 - Excessive Force- Plaintiff PEPIN)

71. Each of the foregoing paragraphs is incorporated as if fully restated here.

72. As described above, the intentional conduct of one of the Defendant OFFICERS toward Plaintiff PEPIN was objectively unreasonable under the circumstances, and constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

73. One or more Defendant OFFICERS were aware of the misconduct of his fellow police officer(s), had a reasonable opportunity to intervene to prevent the misconduct and the damages suffered by Plaintiff PEPIN, but failed to do so.

74. As a direct and proximate result of the Defendant OFFICERS' excessive use of force, Plaintiff PEPIN suffered both physical and emotional damages, which will be proven at trial.

**WHEREFORE,** Plaintiff PEPIN prays for a judgment against one or more of Defendant OFFICERS in a fair and just amount sufficient to compensate Plaintiff PEPIN for the injuries she has suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

### COUNT V
(42 U.S.C. § 1983 - Unlawful Search of Plaintiffs' Home)

75. Each of the foregoing paragraphs is incorporated as if fully restated here.

76. As described above, Defendants PIERRI and BARNAS and other UNKNOWN OFFICERS searched Plaintiffs' home without a warrant, probable cause, and without any other legal

justification to do so. Thus, Defendant OFFICERS' actions were in violation of the Fourth Amendment to the United States Constitution.

77. One or more Defendant OFFICERS were aware of the misconduct of his fellow police officers, had a reasonable opportunity to intervene to prevent the misconduct and the damages suffered by Plaintiffs, but failed to do so.

78. As a direct and proximate result of this unlawful search, Plaintiffs suffered pecuniary and emotional damages, which will be proven at trial.

**WHEREFORE**, Plaintiffs pray for a judgment against Defendants PIERRI and BARNAS and other UNKNOWN OFFICERS in a fair and just amount sufficient to compensate Plaintiffs for the injuries they have suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

## COUNT VI
(42 U.S.C. § 1983 - Unlawful Entry/Search of Plaintiffs' Backyard & Garage)

79. Each of the foregoing paragraphs is incorporated as if fully restated here.

80. As described above, Defendants NAVEZ and LOMELI entered Plaintiffs' backyard and garage without a warrant, probable cause, and without any other legal justification to do so. Moreover, the scope and manner of this search was objectively unreasonable under the circumstances, and thus, in violation of the Fourth Amendment to the United States' Constitution.

81. Each of these Defendant OFFICERS was aware of the misconduct of his partner, had a reasonable opportunity to intervene to prevent the misconduct and the damages suffered by Plaintiffs but failed to do so.

82. As a direct and proximate result of this unlawful search, Plaintiffs suffered physical and emotional damages, which will be proven at trial.

**WHEREFORE**, Plaintiffs pray for a judgment against Defendants NAVEZ and LOMELI in a fair and just amount sufficient to compensate Plaintiffs for the injuries they have suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

## COUNT VII
(42 U.S.C. § 1983 - Conspiracy to Deprive Constitutional Rights)

83. Each of the foregoing paragraphs is incorporated as if fully restated here.

84. As described more fully above, the Defendant OFFICERS reached an express or implied agreement to violate Plaintiffs' constitutional rights as described in the preceding paragraphs.

85. One or more of Defendant OFFICERS further conspired to cover up their own, and each others' misconduct with respect to Plaintiffs.

86. In furtherance of the conspiracy, each of the co-conspirators committed overt acts or omissions and was an otherwise willful participant in joint activity.

87. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs.

88. As a result of the Defendants' conduct, Plaintiffs suffered damages, which will be proven at trial.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate Plaintiffs for the injuries they have suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

## COUNT VIII
(Illinois Battery Claim- Plaintiff FIELDS)

89. Each of the foregoing paragraphs is incorporated as if fully restated here.

90. As described above, Defendant NAVEZ willfully and wantonly and without legal justification used physical force upon Plaintiff FIELDS.

91. As a direct and proximate result of this intentional misconduct, Plaintiff FIELDS was physically and emotionally harmed.

92. Illinois law provides that public entities, such as Defendant CITY, are required to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

93. At all relevant times, Defendant NAVEZ was acting as an agent of Defendant CITY, and was acting within the scope of his employment as a Chicago police officer. Defendant CITY, therefore, is liable as a principal for the tortious conduct of Defendant NAVEZ towards Plaintiff FIELDS.

**WHEREFORE,** Plaintiff FIELDS prays for judgment against Defendant NAVEZ and Defendant CITY in a fair and just amount that is sufficient to compensate Plaintiff FIELDS for the injuries he has suffered, as well as for such other relief as is just and equitable.

## COUNT IX
(Illinois Battery Claim- Plaintiff PEPIN)

94. Each of the foregoing paragraphs is incorporated as if fully restated here.

95. As described above, one of the Defendant OFFICERS willfully and wantonly and without legal justification used physical force upon Plaintiff PEPIN.

96. As a direct and proximate result of this intentional misconduct, Plaintiff PEPIN was physically and emotionally harmed.

97. Illinois law provides that public entities, such as Defendant CITY, are required to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

98. At all relevant times, Defendant OFFICERS were acting as agents of Defendant CITY, and acting within the scope of their employment as Chicago police officers. Defendant CITY, therefore, is liable as a principal for the tortious conduct of each Defendant OFFICER.

**WHEREFORE,** Plaintiff PEPIN prays for judgment against the UNKNOWN Defendant Officer and Defendant CITY in a fair and just amount that is sufficient to compensate Plaintiff PEPIN for the injuries she has suffered, as well as for such other relief as is just and equitable.

### COUNT X
(Illinois False Imprisonment Claim-Plaintiff PEPIN)

99. Each of the foregoing paragraphs is incorporated as if fully restated here.

100. As described above, one or more UNKNOWN OFFICERS and Defendants TEDESCHI and PEREZ, unlawfully seized and detained Plaintiff PEPIN without a warrant, without probable cause, and without any other legal justification to do so.

101. These Defendant OFFICERS acted willfully and wantonly, in that they intended to violate, or were recklessly indifferent to violating, Plaintiff PEPIN's rights.

102. As a direct and proximate result of Defendant OFFICERS' misconduct, Plaintiff PEPIN suffered physical and emotional damages, which will be proven at trial.

103. Illinois law provides that public entities, such as Defendant CITY, are required to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

104. At all relevant times, these Defendant OFFICERS were acting as agents of Defendant CITY, and were acting within the scope of their employment as Chicago police officers. Defendant CITY, therefore, is liable as a principal for the tortious conduct of Defendant OFFICERS towards Plaintiff PEPIN.

**WHEREFORE,** Plaintiff PEPIN prays for judgment against UKNOWN OFFICERS, Defendants TEDESCHI and PEREZ and Defendant CITY in a fair and just amount that is sufficient to compensate Plaintiff PEPIN for the injuries she has suffered, as well as such other relief as is just and equitable.

## COUNT XI
(Illinois Intentional Infliction of Emotional Distress Claim- Plaintiff FIELDS)

105. Each of the foregoing paragraphs is incorporated as if fully restated here.

106. As more fully described above, Defendant OFFICERS engaged in conduct with respect to Plaintiff FIELDS which was extreme and outrageous.

107. Defendants acted willfully and wantonly in that they intended, or were recklessly indifferent towards, causing Plaintiff FIELDS severe emotional distress, knowing that there was a high probability that their behavior would cause Plaintiff FIELDS severe emotional distress and mental anguish.

108. As a direct and proximate result of Defendants' misconduct, Plaintiff FIELDS has, in fact, suffered severe emotional distress.

109. Illinois law provides that public entities, such as Defendant CITY, are liable for compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

110. At all relevant times, Defendant OFFICERS were agents of Defendant CITY and employees of the Chicago Police Department acting within the scope of their employment. Defendant CITY, therefore, is liable as principal for all torts committed by its agents, Defendant OFFICERS.

**WHEREFORE**, Plaintiff FIELDS prays for judgment against Defendants in a fair and just amount sufficient to compensate him for the injuries he suffered, plus, all such other relief as this Court finds just and equitable.

### COUNT XII
(Illinois Intentional Infliction of Emotional Distress Claim- Plaintiff PEPIN)

111.  Each of the foregoing paragraphs is incorporated as if fully restated here.

112.  As more fully described above, Defendant OFFICERS engaged in conduct with respect to Plaintiff PEPIN, which was extreme and outrageous.

113.  Defendants acted willfully and wantonly in that they intended, or were recklessly indifferent towards, causing Plaintiff PEPIN severe emotional distress, knowing that there was a high probability that their behavior would cause Plaintiff PEPIN severe emotional distress and mental anguish.

114.  As a direct and proximate result of Defendants' misconduct, Plaintiff PEPIN has, in fact, suffered severe emotional distress.

115.  Illinois law provides that public entities, such as Defendant CITY, are liable for compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

116.  At all relevant times, Defendant OFFICERS were agents of Defendant CITY and employees of the Chicago Police Department acting within the scope of their employment. Defendant CITY, therefore, is liable as principal for all torts committed by its agents, Defendant OFFICERS.

**WHEREFORE**, Plaintiff PEPIN prays for judgment against Defendants in a fair and just amount sufficient to compensate her for the injuries she suffered, plus, all such other relief as this Court finds just and equitable.

## COUNT XIII
(Illinois Trespass Claim)

117. Each of the foregoing paragraphs is incorporated as if fully restated here.

118. As more fully described in preceding paragraphs, UNKNOWN OFFICERS entered and searched Plaintiffs' home without a legal justification to do so. This constituted an unwanted and uninvited invasion into Plaintiffs' exclusive possession of their home, in violation of Illinois common law.

119. This unwarranted invasion into Plaintiffs' home proximately caused damages to Plaintiffs' home and caused an interference with Plaintiffs' use and enjoyment of their home.

120. On information and belief, Defendants PIERRI and BARNES were two of the supervisors in charge of the scene that night, and either participated in, or condoned this unlawful trespass into Plaintiffs' home.

121. Illinois law provides that public entities, such as Defendant CITY, are required to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

122. At all relevant times, Defendant OFFICERS were acting as agents of Defendant CITY, and were acting within the scope of their employment as Chicago police officers. Defendant CITY, therefore, is liable as a principal for the tortious conduct of Defendant OFFICERS towards Plaintiff.

**WHEREFORE,** Plaintiffs pray for judgment against UKNOWN OFFICERS, Defendants PIERRI, BARNAS and Defendant CITY in a fair and just amount that is sufficient to compensate Plaintiffs for the injuries they have suffered, as well as such other relief as is just and equitable.

## COUNT XIV
(Illinois Conversion Claim)

123. Each of the foregoing paragraphs is incorporated as if fully restated here.

124. As more fully described above, Plaintiffs had an absolute and unconditional right to the specific amount of United States' currency and the food items inside their home, and one or more UNKNOWN OFFICER(S) wrongfully and without authorization assumed control, dominion or ownership over the currency and the food items belonging to Plaintiffs.

125. UNKNOWN OFFICER(S) acted willfully and wantonly in that they intended, or were recklessly indifferent towards Plaintiffs' absolute right to possess their currency and property.

126. As a proximate result of UNKNOWN OFFICER(S') conversion of Plaintiffs' currency and property, Plaintiffs suffered pecuniary loss.

127. Illinois law provides that public entities, such as Defendant CITY, are liable for compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

128. At all relevant times, UNKNOWN OFFICER(S) were agents of Defendant CITY and employees of the Chicago Police Department acting within the scope of their employment. Defendant CITY, therefore, is liable as principal for all torts committed by its agents, UNKNOWN OFFICERS.

  **WHEREFORE**, Plaintiffs pray for restitution from Defendants CITY and UNKNOWN OFFICERS for the fair market value of the items taken in addition to the actual amount of United States currency, which UNKNOWN OFFICERS unlawfully converted, plus, all such other relief as this Court finds just and equitable.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully Submitted,

ERICK FIELDS and URSULA PEPIN, Plaintiffs,

By:  /s/ Torreya L. Hamilton
   Attorney for Plaintiffs

HAMILTON LAW OFFICE, LLC
11 South LaSalle St., Suite 1000
Chicago, IL 60603
312.726.3173
tlh@thehamiltonlawoffice.com
Attorney No. 6229397