


Attorney No. 91018

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ERICK FIELDS<br><br>Plaintiff,<br><br>v.<br><br>The CITY OF CHICAGO, Illinois, a municipal Corporation, and Chicago Police Officers PETAIN NAVEZ (#191130), JOSE LOMELI (#19363), STEVEN RIVERA (#15920), MANUEL GUZMAN (#9798), ROGELIO PINAL (#18585), ROBERT CAVIANI (#12062), BRIAN SPRENG (35688), MATTHEW GRAF (#11571), MICHAEL BURKE (#4359), NICHOLAS ORLANDO (#12756), FRANK PIERRI (#2550), KENNETH BARNAS (#70), BRIAN TEDESCHI (#20243), ALBERT PEREZ (#20733), DONALD FALK (#20409), ANTHONY NORADIN (#21252), RONALD BANAS (#21007), and other UNKNOWN CHICAGO POLICE OFFICERS,<br><br>Defendants. | ) | No. 12 CV 1306<br><br>Judge Castillo<br><br>Magistrate Judge Gilbert<br><br>JURY DEMAND |

**<u>SECOND AMENDED COMPLAINT</u>**

Plaintiffs, ERICK FIELDS, through his attorneys, George B. Collins, Christopher Bargione, and Benjamin Butler, of Collins, Bargione & Vuckovich and Lawrence Wolf Levin, and for his complaint against Defendants The CITY OF CHICAGO ("Defendant CITY") and Chicago Police Officers PETAIN NAVEZ, JOSE LOMELI, STEVEN RIVERA, MANUEL GUZMAN, ROGEUO PINAL, ROBERT CAVAIANI, BRIAN SPRENG, MATTHEW GRAF, MICHAEL BURKE, NICHOLAS ORLANDO, FRANK PIERRI, KENNETH BARNAS, BRIAN TEDESCHI, ALBERT PEREZ, DONALD FALK, ANTHONY NORADIN, RONALD

BANAS, and UNKNOWN CHICAGO POLICE OFFICERS ("Defendant OFFICERS") states as follows:

## JURISDICTION AND VENUE

1. This is an action brought pursuant to 42 U.S.C. §1983 to address the deprivation, under color of law, of the Plaintiff's rights under the United States Constitution and under the common law of Illinois.

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred within this district.

## PARTIES

4. Plaintiff FIELDS is a thirty-one year old small business owner and a life-long resident of Chicago, Illinois.

5. At all relevant times, Defendant OFFICERS were Chicago police officers, employed by the Defendant CITY, and were acting within the scope of their employment, under the color of law.

6. Defendant CITY is a municipal corporation, duly incorporated under the laws of the State of Illinois, and at all relevant times, was the employers and principal of Defendant OFFICERS.

## FACTS

7. Plaintiff FIELDS and Ursula Pepin had been together for eight years and they lived in a single family home owned by Plaintiff FIELDS, located at 2210 North Keystone, in Chicago,

Illinois. Plaintiff FIELDS still lives in the home located at 2210 N. Keystone in Chicago, Illinois.

8. Plaintiff's home sits on a double lot, which is surrounded on all sides by a tall wooden fence.

9. In the back of Plaintiffs' property he has a detached two-car garage. Plaintiff's garage opens via an overhead door into an alley behind Plaintiff's home. Plaintiff's garage also has a side door which opens into his back yard well inside the fence.

**Police Officers Shoot Plaintiff FIELDS In The Stomach While He Is Working On His Own Car In His Own Garage**

10. On the evening of February 24, 2011, around 8:00 p.m., Plaintiff FIELDS was in the garage removing a license plate from one of his cars.

11. Plaintiff FIELDS was using a small, ten-millimeter socket wrench to remove his License plate, and he had a wrench set open on the floor of the garage next to the car.

12. The overhead door to the garage was closed and the garage was well lit so that Plaintiff FIELDS could see what he was doing as he worked on his car.

13. Unbeknownst to Plaintiff FIELDS, Defendants NAVEZ and LOMELI entered Plaintiff's backyard with their guns drawn, and quietly made their way to the side door of Plaintiff's garage.

14. Hearing footfalls in his backyard, Plaintiff FIELDS stood up to investigate.

15. Defendant NAVEZ entered Plaintiff's garage holding a handgun with Defendant LOMELI one to two feet behind him.

16. Without provocation, Defendant NAVEZ shot Plaintiff FIELDS in the abdomen.

17. The bullet from Defendant NAVEZ's gun pierced Plaintiff FIELDS' liver and exited the right side of his body.

18. Plaintiff FIELDS fell immediately to the ground asking, "Why did you shoot me?" or words to that effect.

19. Instead of administering first aid or calling for an ambulance immediately, Defendant NAVEZ swore, and then turned and left the garage.

**The Shooter And His Fellow Officers Discuss What To Do Next Instead Of Immediately Calling For An Ambulance**

20. Defendants RIVERA, GUZMAN, and PINAL were the first officers to arrive on the scene either before, or just after, Defendant NAVEZ shot Plaintiff FIELDS. On information and belief, these officers conferred with NAVEZ and LOMELI outside the garage, while Plaintiff FIELDS lay bleeding on the ground inside the garage.

21. Defendant NAVEZ returned to the garage and searched Plaintiff FIELDS, finding him unarmed. Defendant NAVEZ then left the garage again, leaving Plaintiff FIELDS lying on the ground, bleeding.

22. On information and belief, Defendants NAVEZ, LOMELI, RIVERA, GUZMAN and PINAL delayed making a call for emergency assistance for Plaintiff FIELDS while they considered what to do.

23. Meanwhile, alone inside the garage and afraid he was dying, Plaintiff FIELDS used his cell phone to call Ursula Pepin. When she did not answer (because she was already outside), Plaintiff FIELDS called his mother and told her the police had just shot him and he needed help.

24. While Plaintiff FIELDS was on the phone with his mother, Defendant LOMELI entered the garage and took his phone away from him, terminating his call with his mother.

25. On information and belief, only after Plaintiff FIELDS was observed talking on his cell phone, did one of the Defendant OFFICERS summon an ambulance for him.

26. One or more of Defendant OFFICERS then opened the overhead door of the garage, allowing Ursula Pepin to see, from her position in the alley that Plaintiff FIELDS was lying on the floor of the garage with three police officers standing over him.

27. One of the Defendant OFFICERS told Ursula Pepin that Plaintiff FIELDS was fine and could get up and walk if he wanted to, but he just chose not to, or words to that effect.

28. When an ambulance arrived on the scene, it could not get close to Plaintiff FIELDS because police cars were blocking the alley.

29. Defendant OFFICERS did not allow the ambulance personnel into the garage where Defendant NAVEZ had shot Plaintiff FIELDS. Instead, Defendant OFFICERS carried him out of the garage.

**Ursula Pepin Is Detained in A Squad Car While Chicago Police Officers Ransack Plaintiffs, Home Looking For Something To Justify The Shooting**

30. While refusing to answer Ursula Pepin's questions, Defendants TEDESCHI and PEREZ led Ursula Pepin away from her home and put her into a squad car. These Defendants interrogated Ursula Pepin and then caused her to be detained inside the squad car against her will for more than two hours.

31. While Ursula Pepin was forcibly kept away from her home, UNKNOWN OFFICERS entered and searched Plaintiff's home without a search warrant or any other legal justification to do so.

32. On information and belief, during the approximately three to four hours following the shooting, as many as seventy-five Chicago police officers, and perhaps more, were either inside or outside Plaintiff's home and/or garage at various times.

33. UNKNOWN OFFICERS conducted an exhaustive search of Plaintiff's home. They

searched storage boxes, drawers and cabinets, and the pockets of clothing, which was hanging in closets. UNKNOWN OFFICERS even removed insulation and pieces of drywall to look inside the walls of Plaintiff's home.

34. On information and belief, Defendants PIERRI and BARNAS were two of the supervisors directing the investigation that night, and they were aware of, and condoned, the search of Plaintiff's home without a search warrant or probable cause.

35. Defendant PIERRI and BARNAS also authorized the use of a Chicago Police Department canine unit to search the inside of Plaintiff's home and garage.

36. There was nothing illegal in either Plaintiff's home or their garage.

37. After being held in a squad car against her will for more than two hours, Ursula Pepin was finally escorted back to her home by three police officers.

38. As they arrived at her front door, one of the Defendant OFFICERS informed Ursula Pepin for the first time, that Plaintiff FIEIDS had been shot, but they did not tell her a police officer shot him.

39. Ursula Pepin returned to the house and discovered it had been thoroughly searched and was in total disarray.

**Plaintiff FIELDS Fights For His Life And Suffers Emotionally**

40. Plaintiff FIELDS was rushed into surgery that night in an attempt to repair the damage done by the bullet fired from DEFENDANT Navez's gun. During surgery, approximately 90 percent of Plaintiff FIELDS' liver had to be removed due to damage from the bullet.

41. Plaintiff FIELDS required multiple blood transfusions to replace the blood he lost on the floor of his garage and during surgery.

42. Sometime that night, Defendants FALK, NORADIN and BANAS questioned Plaintiff FIELDS while he was still in the emergency room and later conveyed false information about this interview to other detectives.

43. Plaintiff FIELDS was gravely ill for several weeks and remained in the hospital for nearly a month.

44. When Plaintiff FIELDS was finally released from the hospital, he left with several holes in his torso, which operated as drains.

45. Plaintiff FIELDS subsequently developed a severe infection and had to return to the hospital for a week and a half in order to treat the infection.

46. Upon his release the second time, Plaintiff FIELDS had to self-administer intravenous antibiotics for several weeks.

47. Plaintiff FIELDS has lost 30-40 pounds as a result of his injuries and he has been unable to gain it back.

48. Defendant NAVEZ and LOMELI caused Plaintiff FIELDS to suffer severe pain as well as long-term disability and permanent disfigurement.

49. As a result of Defendant OFFICERS' misconduct, Plaintiff FIELDS has suffered serious emotional damages, and he will continue to suffer indefinitely, both physically and emotionally.

50. Plaintiff FIELDS has hundreds of thousands of dollars of medical bills and this debt has affected his credit and his financial stability.

**COUNT I**

(42 U.S.C. § 1983 - Excessive Force - Plaintiff FIELDS)

51. FIELDS realleges and incorporates paragraphs one through 50 and as for paragraph 51 of this Count I as though fully set forth herein.

52. As described above, the intentional conduct of the Defendant NAVEZ and LOMELI toward Plaintiff FIELDS was objectively unreasonable under the circumstances, and thus constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

53. Defendant LOMELI was aware of the misconduct of his fellow police officer, had a reasonable opportunity to intervene to prevent the misconduct and the damages suffered by Plaintiff FIELDS, but failed to do so.

54. As a direct and proximate result of the Defendant NAVEZ and LOMELI's excessive use of force, Plaintiff FIELDS suffered both physical and emotional damages, which will be proven at trial.

WHEREFORE, Plaintiff FIELDS prays for a judgment against Defendants NAVEZ and LOMELI in a fair and just amount sufficient to compensate Plaintiff FIELDS for the severe injuries he has suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

**COUNT II**

(42 U.S.C. § 1983 - Failure To Provide Timely Medical Care - Plaintiff FIELDS)

55. FIELDS realleges and incorporates paragraph one through 50 as and for paragraph 55 of this Count II as though fully set forth herein.

56. Defendants NAVEZ, LOMELI, RIVERA, GUZMAN and PINAL's failure to immediately call for an ambulance for Plaintiff FIELDS, and their failure to allow the paramedics immediate access to Plaintiff FIELDS in the garage, were objectively unreasonable under the circumstances, in violation of the Fourth Amendment to the United States' Constitution.

57. Defendant OFFICERS failure to provide timely medical care to Plaintiff FIELDS proximately resulted in additional physical and emotional harm to Plaintiff FIELDS.

58. As a direct and proximate result of Defendant OFFICERS' acts or omissions, Plaintiff FIELDS suffered severe physical, emotional and financial damages, which will be proven at trial.

WHEREFORE, Plaintiff FIELDS prays for a judgment against Defendants NAVEZ, LOMELI, RIVERA, GUZMAN, and PINAL, in a fair and just amount sufficient to compensate Plaintiff FIELDS for the severe injuries he has suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

**COUNT III**
(42 U.S.C. § 1983 --Unlawful Search of Plaintiff's Home)

59. FIELDS realleges and incorporates paragraph one through 50 as and for paragraph 59 of this Count III as though fully set forth herein.

60. As described above, Defendants PIERRI and BARNAS and other UNOWN OFFICERS searched Plaintiff's home without a warrant, probable cause, and without any other legal justification to do so. Thus, Defendant OFFICERS' actions were in violation of the Fourth Amendment to the United States Constitution.

61. One or more of Defendant OFFICERS were aware of the misconduct of his fellow police officers, had a reasonable opportunity to intervene to prevent their misconduct and the damages suffered by Plaintiff FIELDS, but failed to do so.

62. As a direct and proximate result of this unlawful search, Plaintiff FIELDS suffered pecuniary and emotional damages, which will be proven at trial.

WHEREFORE, Plaintiff FIELDS prays for a judgment against Defendant PIERRI and BARNAS and other UNKNOWN OFFICERS in a fair and just amount sufficient to compensate Plaintiff FIELDS for the injuries he has suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

**COUNT IV**

(42 U.S.C. § 1983 – Unlawful Entry/Search of Plaintiff's Backyard and Garage)

63. FIELDS realleges and incorporates paragraph one through 50 as and for paragraph 63 of this Count IV as though fully set forth herein.

64. As described above, Defendants NAVEZ and LOMELI entered plaintiff's backyard and garage without a warrant, probable cause, and without any other legal justification to do so. Moreover, the scope and manner of this search was objectively unreasonable under the circumstances, and thus, in violation of the Fourth Amendment to the United States Constitution.

65. Each of these Defendant OFFICES was aware of the misconduct of his partner, had a reasonable opportunity to intervene to prevent the misconduct and the damages suffered by Plaintiff FIELDS but failed to do so.

66. As a direct and proximate result of this unlawful search, Plaintiff FIELDS suffered pecuniary and emotional damages, which will be proven at trial.

WHEREFORE, Plaintiff prays for a judgment against Defendants NAVEZ and LOMELI in a fair and just amount sufficient to compensate Plaintiff for the injuries he has suffered, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

**COUNT V**

(42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights)

67. FIELDS realleges and incorporates paragraph one through 50 as and for

paragraph 67 of this Count V as though fully set forth herein.

68. As described more fully above, the Defendant OFFICERS reached an express or implied agreement to violate Plaintiff's constitutional rights as described in the preceding paragraphs.

69. One or more of Defendant OFFICERS further conspired to cover up their own, and each others' misconduct with respect to Plaintiff.

70. In furtherance of the conspiracy, each of the co-conspirators committed overt acts or omissions and was an otherwise willful participant in joint activity.

71. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs.

72. As a result of the Defendants' conduct, Plaintiff suffered damages, which will be proven at trial.

WHEREFORE, Plaintiff pray for judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate Plaintiffs for the injuries they have suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

**COUNT VI**

(Illinois Battery Claim- Plaintiff FIELDS)

73. FIELDS realleges and incorporates paragraph one through 50 as and for paragraph 73 of this Count VI as though fully set forth herein.

74. As described above, Defendant NAVEZ willfully and wantonly and without legal justification used physical force upon Plaintiff FIELDS.

75. As a direct and proximate result of this intentional misconduct, Plaintiff FIELDS was physically and emotionally harmed.

76. Illinois law provides that public entities, such as Defendant CITY, arc required to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

77. At all relevant times, Defendant NAVEZ was acting as an agent of Defendant CITY, and was acting within the scope of his employment as a Chicago police officer. Defendant CITY, therefore, is liable as a principal for the tortious conduct of Defendant NAVEZ towards Plaintiff FIELDS.

WHEREFORE, Plaintiff FIELDS prays for judgment against Defendant NAVEZ and Defendant CITY in a fair and just amount that is sufficient to compensate Plaintiff FIELDS for the injuries he has suffered, as well as for such other relief as is just and equitable.

**COUNT VII**

(Illinois Intentional Infliction of Emotional Distress Claim- Plaintiff FIELDS)

78. FIELDS realleges and incorporates paragraph one through 50 as and for paragraph 78 of this Count VII as though fully set forth herein.

79. As more fully described above, Defendant OFFICERS engaged in conduct with respect to Plaintiff FIELDS which was extreme and outrageous.

80. Defendants acted willfully and wantonly in that they intended or were recklessly indifferent towards, causing Plaintiff FIELDS severe emotional distress, knowing that there was a high probability that their behavior would cause Plaintiff FIELDS severe emotional distress and mental anguish.

81. As a direct and proximate result of Defendants' misconduct, Plaintiff FIELDS has, in fact, suffered severe emotional distress.

82. Illinois law provides that public entities, such as Defendant CITY, are liable for compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

83. At all relevant times, Defendant OFFICERS were agents of Defendant CITY and employees of the Chicago Police Department acting within the scope of their employment. Defendant CITY, therefore, is liable as principal for all torts committed by its agents, Defendant OFFICERS.

WHEREFORE, Plaintiff FIELDS prays for judgment against Defendants in a fair and just amount sufficient to compensate him for the injuries he suffered, plus, all such other relief as this Court finds just and equitable.

**COUNT VIII**
(Illinois Trespass Claim)

84. FIELDS realleges and incorporates paragraph one through 50 as and for paragraph 84 of this Count VIII as though fully set forth herein.

85. As more fully described in preceding paragraphs, UNKNOWN OFFICERS entered and searched Plaintiff's' home without a legal justification to do so. This constituted an unwanted and uninvited invasion into Plaintiff's exclusive possession of their home, in violation of Illinois common law.

86. This unwarranted invasion into Plaintiff's home proximately caused damages to Plaintiff's home and caused an interference with Plaintiff's use and enjoyment of his home.

87. On information and belief, Defendants PIERRI and BARNES were two of the supervisors in charge of the scene that night, and either participated in, or condoned this unlawful trespass into Plaintiff's home.

88. Illinois law provides that public entities, such as Defendant CITY, are required to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

89. At all relevant times, Defendant OFFICERS were acting as agents of Defendant CITY, and were acting within the scope of their employment as Chicago police officers. Defendant CITY, therefore, is liable as a principal for the tortious conduct of Defendant OFFICERS towards Plaintiff.

WHEREFORE, Plaintiff prays for judgment against UKNOWN OFFICERS, Defendants PIERRI, BARNAS and Defendant CITY in a fair and just amount that is sufficient to compensate Plaintiff for the injuries he has suffered, as well as such other relief as is just and equitable.

Respectfully Submitted,

ERICK FIELDS

By: _/a/ Christopher Bargione_____
Attorney for Plaintiff

George B. Collins
Christopher Bargione
Benjamin Butler
COLLINS, BARGIONE & VUCKOVICH
One North LaSalle St., Suite 300
Chicago, IL 60602
(312) 372-7813

Lawrence Wolfe Levine
214 W. Ohio Street, 5th Floor
Chicago, IL 60654
312-236-7543