**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

ERICK FIELDS, )
)
    Plaintiff, )
)  No. 1:12 CV 1306
   v. )
)  Honorable Ruben Castillo
The CITY OF CHICAGO, et.al. )
)
    Defendants. )

**PLAINTIFF'S MOTIONS *IN LIMINE***

Now comes the Plaintiff, ERICK FIELDS, by and through his attorney Christopher

Bargione of Collins Bargione & Vuckovich in connection with the impending trial herein,

submits the following motions *in limine.* In support thereof Plaintiff states as follows:

*Plaintiff's Motion In Limine No. 1*
*(Defendants object to this Motion in Limine)*

**Defendants Should Be Barred From Eliciting Evidence Or Arguing That Any Defendant**
**Police Officers Would Suffer Negative Consequences In Their Professional Career As A**
**Result Of The Outcome Of The Trial.**

The Police Officer Defendants should not be able to elicit evidence or argue that they

may suffer adverse professional consequences as a result of any verdict. Specifically, Plaintiff

seeks to bar testimony or argument that the police officer defendants would never have engaged

in the complained of conduct because they would be reprimanded, suspended, demoted or lose

their jobs. Any such testimony is irrelevant, speculative and would serve to improperly bolster

Defendant Officers credibility. Federal Rules of Evidence 401, 402, 403, 404, and 602.

Further, any argument or suggestion to the jury concerning the Police Officer Defendants

personal liability for any compensatory damage award is misleading and highly prejudicial. The

purpose of such a suggestion is to (falsely) lead the jury to believe that the Police Officer

1

Defendants will be personally liable for any compensatory damages assessed against them. By statute and case law (see e.g. 745 ILCS 10/9-102, *Wilson v. City of Chicago*, 120 F.3d 681 (7th Cir. 1997), the individual Defendants are indemnified for any compensatory civil rights judgments entered against them. As such, any suggestion, argument or inference that Police Officer Defendants would be liable for any compensatory damage award must be barred.

*Plaintiff's Motion In Limine No. 2*
*(Defendants object to this Motion in Limine)*

**To Bar Any Evidence Or Argument Regarding Gun Violence**
**In The City Of Chicago**

Pursuant to Federal Rules of Evidence 401 and 402, such evidence is irrelevant to the material issue involved in this case, that is, whether the Defendant Navez's use of force was reasonable under the circumstances. Additionally, pursuant to Federal Rule of Evidence 403, such evidence has no probative value to the issues before the jury and would create significant prejudice to the Plaintiff.

The Defense should be also barred from making any comments or references to Chicago Police Officers killed or shot in the line of duty. Such arguments are an improper appeal to the emotions of jurors designed to engender sympathy and should be excluded as irrelevant to the issues of whether the Defendant Navez's use of force was reasonable under the circumstances of this particular case.

*Plaintiff's Motion In Limine No. 3*
*(Defendants object to this Motion in Limine)*

**Defendants Should Be Barred From Questioning Plaintiff Erick Fields Regarding Any**
**Arrests Or Contacts With The Police Outside Of This Case**

Defendants should be barred from arguing, inferring, questioning any witness, introducing any evidence or making any comments that Plaintiff has ever been arrested or had

contact with the police other than in the present case. Such evidence is: (1.) irrelevant to any issues in this case; (2.) any probative value is substantially outweighed by the prejudicial effect of such evidence; and (3.) it constitutes improper character evidence and/or improper impeachment.

The mere fact of an arrest is not relevant to any issue material in this case and should be excluded pursuant to Federal Rules of Evidence 401 and 402. It is well established that generally a witness's arrest record will not be admissible. *Thompson v. City of Chicago*, 722 F.3d 963, 977 (7th Cir. 2013). This rule is based upon a clear recognition that the minimal probative value of such evidence is so overwhelmingly outweighed by its inevitable tendency to inflame and prejudice the jury against the Plaintiff. *Barber v. City of Chicago*, 725 F.3d 702, 709 (7th Cir. 2013). As a consequence, total and complete exclusion is required in order to ensure the right to trial by a fair and impartial jury. *Id.* at 709.

Moreover, evidence of prior arrests would also be inadmissible under Federal Rules of Evidence 403 and 404(b). Prior arrests are usually inadmissible under Federal Rule of Evidence 403, which bars evidence when its probative value is outweighed by its risk of prejudice, and Federal Rule of Evidence 404(b), which provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but "may ... be admissible for other purposes." Fed. R. Evid. 403 and 404(b); *see Cruz v. Safford*, 579 F.3d 840, 845 (7th Cir. 2009) (finding district court did not abuse its discretion by excluding evidence of seven prior arrests since the probative value of such prior arrests was outweighed by the risk of prejudice).

*Plaintiff's Motion in Limine #4*
*(Defendants object to this Motion in Limine)*

**Plaintiff Should Be Permitted To Treat All Chicago Police Officers Who Testify In This Case As Hostile Witnesses**

Plaintiff seeks to treat all non-Defendant Chicago Police Officers as hostile witnesses pursuant to Federal Rule of Evidence 611(c), which governs this area. Federal Rule of Evidence 611 (c). In relevant part, Rule 611 (c) provides that leading questions can be used: "When a party calls a hostile witness, or a witness identified with an adverse party." It is well established that police officers may be called as adverse witnesses in section 1983 actions. *Ellis v. City of Chicago*, 667 F. 2d 606 (7th Cir. 1981). In *Ellis*, the Seventh Circuit held that a police officer employed by the City of Chicago and involved in the incident at issue "clearly qualified" as a witness identified with an adverse party pursuant to Federal Rule of Evidence 611(c).

Defendants assert Plaintiffs should need to establish that a witness is hostile before cross-examining a witness called in their case in chief. Here, all Chicago Police Officers expected to testify in this case were directly involved in the same incident as Police Officer Defendants and all are employees and agents of Defendant City of Chicago. All of these officers were involved with the arrest of Plaintiff Erick Fields or the subsequent investigation. All of the officers are employed by and an agent of the same municipality, which is in position of indemnitor to the Police Officer Defendants in its own right. Moreover, each officer was produced for and represented at his deposition by the same attorneys that represented Police Officer Defendants. Consequently, Plaintiff should be allowed to treat all non-party Chicago Police Officers in this case as hostile witnesses as they were involved in the same incident, work for the same department, are paid by the same municipality and were all represented by the same attorneys.

*Plaintiff's Motion in Limine #5*
*(Defendants object to this Motion in Limine)*

**Defendants Should Be Barred From Referring To The Neighborhood Where The Shooting Occurred As High Crime Or Otherwise In A Negative Light**

Plaintiff seeks to bar any testimony, reference or comment that the area of Keystone Ave. and Palmer Ave. is a "high crime area," "gang infested," "loaded with illegal weapons" or any other similarly negative comments. Such commentary on the neighborhood where Plaintiff and his witnesses reside should be barred because such testimony is irrelevant. Even if relevant, any probative value is substantially outweighed by the prejudicial effect of such evidence. To the extent that such argument seeks to negatively characterize the neighborhood where the Plaintiff and his witnesses live, this evidence constitutes improper character evidence. Furthermore, evidence of this type invites the jury to consider improper considerations in rendering its verdict and would deny the Plaintiff right to a fair trial.

First, any argument or evidence that the area of Keystone Ave. and Palmer Ave. is part of a gang infested, high crime area, or infested with illegal weapons should be excluded pursuant to Federal Rules of Evidence 401 and 402 because such evidence is not relevant to any material fact at issue in this case. If an officer's characterization is based solely on the officer's subjective belief about the neighborhood, it is inadmissible under Federal Rules of Evidence 401 and 402, and has no relevance to the objective standard that governs when law enforcement officers possess reasonable and articulable suspicion that criminal activity is afoot in order to conduct an investigative search under *Terry v. Ohio*., *See* 392 U.S. 1, 21-22, 88 S. Ct. 1868 (1968) ("[I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure of the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"). In this respect, the

Fourth Amendment's objective standard ensures that instances of police misconduct cannot later be justified as lawful based on the officer's subjective belief about the circumstances surrounding the interaction. Here, the issues in this case are not the character of the neighborhood, but whether Plaintiff was the victim of excessive force. The character of a neighborhood, no matter how high the crime rate, does not permit or justify the alleged misconduct and, as such, evidence regarding the character of the neighborhood should be excluded.

Moreover, even if somehow relevant, this evidence should be excluded pursuant to Federal Rule of Evidence 403 because evidence that Plaintiff, or his relatives, purportedly lived in a high crime neighborhood creates an undue risk of unfairly prejudicing Plaintiff without any corresponding probative benefit. Until Defendants can satisfy the Court that there is some relevance other than unfair guilt by association, they should be barred from asking witnesses whether this was or was not a high crime, drug, or gang area. *See United States v. Irvin*, 87 F.3d 860, 865-66 (7th Cir. 1996) (observing the considerable danger of unfair prejudice from evidence that suggests guilt by association); *United States v. Doe*, 149 F.3d 634, 638 (7th Cir. 1998) ("[J]uries should not conclude that a particular defendant is guilty simply because the defendant shares some characteristics with a particular group.").

The totality of the circumstances can only be guided by objective information, and not simply on the officers' subjective beliefs that have no basis in fact. Since the Defendants have failed to produce any relevant evidence that this area is objectively a "high crime area," defendant should be barred from concocting any after-the-fact justification for the unlawful use of excessive force on Plaintiffs based on the character of the neighborhood.

Any attempt to color this as a "high crime area" steeped in drugs, gangs, and guns is an impermissible and unjustified attempt to pander to the fear of jurors in order to justify the Defendant's unlawful conduct. This is nothing more than an improper character attack on Plaintiff, his witnesses, or any other person who resides in that general area that paints with the broadest of brushes. The use of such not so subtle code words only serves to deny the Plaintiff a fair trial by encouraging the jury to decide this case based on the occupation of the Defendant and the negative character of the neighborhood, offering an unofficial justification for any civil rights violations committed by the officers. The clear import of this argument, no matter how it is dressed up and presented, is that the Plaintiff, as a member of this type of community should not be able to collect any award for a civil rights violation because of the community in which the arrest occurred. This evidence should be excluded pursuant to Federal Rules of Evidence 401, 402, 403 and 404 and as improper negative character evidence.

*Plaintiff's Motion in Limine #6*
*(Defendants object to this Motion in Limine)*

**Defendants Should Be Barred From Eliciting Any Testimony From Any Assistant State's Attorney Concerning Any Of The Elements Of The Criminal Offense Or Civil Claim, The Correctness Of The Actions Of The Defendants, Or General/Typical Policies And Procedures**

Defendants should be precluded from eliciting any evidence from any Assistant State's Attorney regarding the elements of the underlying criminal offense, elements of any of the civil claims, or the correctness of any of the Defendants' actions in this case. Any such testimony would constitute previously undisclosed expert testimony. If not expert testimony, it would constitute improper lay opinion testimony to the ultimate issues in the case that would erroneously invade the province of the fact-finder. Such opinion testimony should be excluded as

7

it has never been disclosed, is not relevant and its prejudicial effect would outweigh any legitimate minimal probative value.

Any personal opinion testimony expressed by an Assistant State's Attorney would be improper and would only serve to invade the province of the fact-finder. Any such witness, who would be cloaked with an air of authority and legitimacy from their position, should not be able to testify to any element of any of the criminal charges or the civil claims. As such, Defendant should not be allowed to elicit testimony that Police Officer Defendants did not use excessive force. Nor should any such witness be able to offer explanations as to the pertinent criminal law or explain why in their opinion the criminal case was decided in the manner that it was. An opinion of any one individual on any of these topics goes to the heart of the case and would necessarily improperly influence the jury. This is particularly so given their position of authority and public trust. As such, this evidence should be excluded pursuant to Federal Rule of Civil Procedure 26 and Federal Rules of Evidence 401, 402, and 701. _Zitzka v. Village of Westmont_, 2011 WL 4738249 (N.D. Ill 2011); _see also Aponte v. City of Chicago_, 2011 WL 1838773 (N.D. Ill. 2011).

For similar reasons, the Assistant State's Attorney should also not be able to testify to the correctness of the Police Officer Defendants actions, how Police Officer Defendants actions comported with the actions of other officers on other cases, or offer possible explanations that would serve to exonerate the Police Officer Defendants conduct. This is so even if veiled in a discussion of general policies and procedures or what "typically" happens in a criminal case. Any such testimony would be irrelevant on the grounds of personal opinion or on the grounds that such information is not relevant to the case before the jury. Simply put, Defendants should not be able to retry the criminal case with a prosecutor as their narrator.

Even if there were some legitimate probative value, the prejudicial effect substantially outweighs it and, thus, the evidence should be excluded pursuant to Federal Rule of Evidence 403. Here the *legitimate* probative value of this evidence is negligible at best – basically providing a general understanding of the criminal justice system. In contradistinction, the prejudicial value is obvious and irreparable. This information would: 1) come from a witness that would have an imprimatur of authority, thereby exacerbating the prejudicial effect; 2) involve a subject matter on which the Court would be instructing the jury, thereby leading to potential confusion; 3) involve a complex specialized field of knowledge; 4) would divert the jury from its task of examining the conduct of the Defendants and redirect it towards the Plaintiff; 5) would make a collateral proceeding, albeit related, the central focus of the civil proceeding that could result in effectively retrying the criminal case when that case has already been tried. Considering all of these factors, the admission of any such testimony would be rife with the possibility of error and should be excluded pursuant to Federal Rule of Evidence 403.

*Plaintiff's Motion In Limine #7*
*(Defendants object to this Motion in Limine)*

**Defendants Should Be Barred From Introducing Any Opinion Testimony From Any Chicago Police Officer, Including Defendant Navez, That The Actions Of Defendant Navez In Shooting Plaintiff Were Reasonable**

Defendants should be barred from introducing any opinion testimony that the force used by Defendant Navez was reasonable under the facts of this case. Any such testimony along these lines would constitute improper lay opinion that would invade the province of the jury as fact finder as such testimony goes to the ultimate issue in the case. *United States v. Noel*, 581 F.3d 10 490, 496-97 (7th Cir. 2009); *United States v. Wantuch*, 525 F.3d 505, 514 (7th Cir. 2008). Any such testimony along these lines would constitute impermissible legal conclusions. *Jordan v. City of Chicago*, 08 C 6902, 2012 U.S. Dist. Lexis 3473, slip. op. January 11, 2012.

9

In a similar vein, Defendants should not be allowed to introduce any evidence that he himself complied with any official policies and procedures employed by the Chicago Police Department in shooting the Plaintiff. In this respect, Plaintiff seeks to bar Defendants from speaking about their training regarding the use of force model and their purported compliance therewith. The policies, procedures and particular use of force model would only serve to confuse the jury and would effectively elevate these standards to the status of governing law. Rather, the jury should be clearly instructed on the elements of excessive force – the issue it is to determine.

Defendants assert that the judgment by Officer Navez and other officers as to whether his conduct in this case was consistent with their training and experience is relevant to the reasonableness of Navez's actions. Any opinion testimony by any defense witness that the Defendants' conduct was proper and in accordance with Chicago Police Department policies and procedures should be excluded as irrelevant. The issue for the jury in this case is whether the Defendants' use of force was reasonable under the totality of the circumstances. As such, whether or not an expert witness or another Chicago police officer believes the use of force complied with Chicago Police Department's Use of Force Model or other Chicago Police Department policies and procedures is irrelevant. Such opinion testimony also improperly encroaches on the decision making duty of the jury. It is the function of the trier of fact to access the credibility of witnesses in this case and make the ultimate determination as to whether or not the use of force by the Defendant officers was reasonable. The opinion of other defense witnesses predicated upon purported compliance with Chicago Police Department or other policies only serves to improperly vouch for the credibility of the Defendants. It is well established that the assessment of a witness's credibility is squarely within the province of the

jury. Opinion testimony that the Defendants acted in compliance with Chicago Police Department policies and procedures is irrelevant to the jury's determination that the use of force in this case was reasonable under the totality of circumstances and should be barred.

*Plaintiff's Motion in Limine # 8*
*(Defendants object to this Motion in Limine)*

**The Jury Should Be Instructed On The Issues Of Excessive Force And The Preponderance Of Evidence Prior To Opening Statements.**

Plaintiff respectfully requests this Court to instruct the jury on the issues of excessive force and the preponderance of the evidence prior to opening statements. This practice has been recommended by former Chief Judge Holderman and adopted in cases before District Court Judge Kennelly (*Anderson v. Dercola, et al.*, Case No. 08-C-6622); Judge Feinerman (*Rachubinski v. Herman, et al.*, Case No. 10-C-3793), Judge Pallmeyer (*Morgan v. Stubblefield*, Case No. 10-C-4138); former Chief Judge Holderman (*Edwards, et al. v. Haritos*, Case No. 09-C-1726); and Judge Gottschall (*Davies v. Benbenek*, 12 CR 45). Instructing the jury on the elements of the claims at issue will provide the jury with a roadmap to assist them in its fact-finding mission. Jurors will know what to look for as the trial unfolds and this should be a benefit to both parties. There is not is any identifiable prejudice to either party from following such a course of action.

*Plaintiff's Motion in Limine # 9*
*(Defendants object to this Motion in Limine)*

**The Jury Should Be Allowed To Submit Written Questions Following The Examination Of Each Witness**

Plaintiff respectfully requests this Court to allow members of the jury to submit written questions following the examination of each witness. This practice has also been recommended by former Chief Judge Holderman and adopted in cases before District Court Judges Kennelly

(*Anderson v. Dercola, et al.*, case No. 08-C-6622), Judge Feinerman (*Rachubinski v. Herman, et al.*, case No. 10-C-3793), Judge Pallmeyer (*Morgan v. Stubblefield*, case No. 10-C-4138), J. Gottschall, *(Davies v. Benbenek*, case no. 12 CV 45); as well as Chief Judge Holderman (*Orlando Edwards, et al. v. Haritos, et al.*, Case No. 09-C-1726). By allowing jurors to submit written questions after the examination of a witness, the jury becomes more active and engaged in the trial process, which should benefit both parties. This also allows the jury to address any factual issues that may be of particular interest. Finally, with the Court as the gatekeeper, there is no chance that the improper questions will be asked of a witness.

*Plaintiff's Motion in Limine #10*
*(Defendants do not object to this Motion in Limine)*

**To Bar Any Evidence Or Argument That Plaintiffs' Medical Bills
Have Been Paid By Collateral Sources**

Plaintiff's combined medical bills total $435,697.34 The "Collateral Source Rule" in Illinois bars evidence of medical insurance payments or other collateral sources that have covered some or all of Plaintiffs' medical expenses. *Brumley v. Federal Barge Lines, Inc.*, 78 Ill. App. 3d 799, 396 N.E.2d 1333 (1979). Pursuant to Federal Rules of Evidence 401 and 402, evidence of collateral source payment of Plaintiffs' medical bills would not be relevant, as it would not tend to make the existence of any fact that is of consequence to the determination of this action more or less probable than it would without such evidence. Further, Pursuant to Federal Rule of Evidence 403, such evidence would have no probative value to the issues before the jury, and would create the possibility of significant prejudice to the Plaintiffs. As such, the collateral source of Plaintiffs' medical bills should be barred.

*Plaintiff's Motion in Limine # 11*
*(Defendants object to this Motion in Limine)*

### To Bar Any Evidence Regarding Plaintiff Erick Fields's
### 1999 Conviction For Attempted Murder

Plaintiff next seeks to bar any evidence, reference or argument concerning the fact that Erick Fields was plead guilty to attempted murder in 1999, a crime for which he received 78 months in the Illinois Department of Corrections. Erick Fields was released from confinement on September 21, 2000. This crime falls within Federal Rule of Evidence 609(b), an exception that bars evidence of criminal convictions being used for the purpose of impeachment where the witness was released from confinement more than ten (10) years before the start of trial. Such evidence is not to be admissible where the probative value is outweighed by its prejudicial effect, as in Federal Rule of Evidence 403. Plaintiffs further seek to bar examination, evidence, or argument to the underlying factual basis of that conviction, including but not limited to any details of the allegations or the investigations of the facts surrounding the allegations.

The extreme prejudicial nature of and negative connotations of Plaintiff Erick Fields attempted murder conviction cannot be understated and by far outweigh any probative value that could possibly be gained from an event that took place over twenty (20) years ago and for which the Plaintiff was released from confinement 17 years ago. There is a considerable risk that the jury will improperly give credit to or believe the Defendants' version of events merely because the Plaintiff was convicted of attempted murder (improper propensity evidence) and not because the evidence of the prior crime reflects on his truthfulness. Evidence of Plaintiff Erick Fields Attempted Murder conviction, which is beyond ten (10) years old, invites the jury to decide this matter on an improper basis. If this evidence were to be deemed admissible, the jury may decide in the Defendants' favor not because they believe the use of force was reasonable, but because

13

they do not want to award damages to a person convicted of attempted murder. The risk of substantial prejudice to the Plaintiff is clear, thereby mandating exclusion of the attempted murder conviction pursuant to Federal Rules of Evidence 403 and 609(b).

The law is clear that conviction older than ten (10) years cannot be introduced as character evidence unless its probative value, as supported by specific facts and circumstances, substantially outweighs its prejudicial effect against the witness. *See: United States v. Carr*, 2017 U.S. App. LEXIS 10318 at 6, *United States v. Simms*, 588 F.2d 1145, 1147 (7th Cir. 1978), and *Schmude v. Tricam Indus.*, 556 F.3d 624, 626-627 (7th Cir. 2009). Impeachment of a witness's credibility by admission of a conviction beyond the ten year time limit in rule 906(b) should only be permitted in rare and exceptional circumstances. *United States v. Carr*, 2017 U.S. App. LEXIS 10318 at 6.

A conviction for attempted murder is not relevant to a particular witness's reputation for truthfulness. Id. Federal Rule of Evidence 404 generally forbids the use of prior criminal acts to show that a witness or plaintiff in a civil case, has a dishonest character.

The potential for the finder of fact in this case to assign an undue prejudicial weight to the plaintiff's prior conviction substantially outweighs the probative nature of the evidence. The prejudicial nature of this evidence is heightened by the fact that the Defendants in this matter have also investigated and charged the plaintiff with criminal offenses in connection with the events in question in this case. As such the Plaintiff seeks to exclude evidence of the Plaintiff's 1999 Attempted Murder conviction because the Plaintiff was released from confinement in relation to that charge more than 10 years ago, barring admission of the conviction for the purpose of impeachment under Federal Rule of Evidence 609(b), and the probative value of the evidence does not outweigh the prejudicial effect of its admission under 609(b)(1).

For similar reasons, Plaintiff also seeks to bar examination, evidence, or argument to the underlying factual basis of that conviction, including the circumstances of the events surrounding the conviction or any facts relating to the event in question. There is no connection between the events that took place more than 20 years ago and the events that took place in February of 2011, when the Plaintiff was shot. Further, any examination or argument of the underlying factual predicate will only serve to further exacerbate the obviously prejudicial impact of this evidence.

*Plaintiff's Motion in Limine # 12*
*(Defendants object to this Motion in Limine)*

**To Bar Any Evidence Regarding Street Gangs And Any Alleged**
**Prior Gang Membership Of Erick Fields.**

Plaintiff next moves to exclude any evidence, questioning, argument, or reference to Erick Fields's alleged previous membership in any gang. This evidence is completely irrelevant, lacks foundation, is highly inflammatory and prejudicial and is also inadmissible other bad acts evidence under Federal Rule of Evidence 404(b).

There is no evidence produced or disclosed that Erick Fields was ever in a street gang or had gang membership. It is undisputed that Erick Fields's alleged gang membership was unknown to Defendant Navez at the time of the shooting. The Seventh Circuit has repeatedly re-affirmed the holding in *Sherrod v. Berry*, 856 F.2d 820 (7th Cir. 1988), that in determining the objective reasonableness of the officer's actions, courts are to limit the evidence to the facts known to the officers involved in the use of force. *See, e.g., Deering v. Reich*, 183 F.3d 645, 650 *7th Cir. 1999) ("...the totality of the circumstances...includes information which the officer had at the time of his actions, but not information uncovered later."); *Palmquist v. Selvik*, 111 F.3d 1332 (7th Cir. 1997) (the shooting victim's motive in provoking a fatal confrontation with the police not admissible as it was unknown to the police officers at the time of the shooting).

Gang evidence or argument is irrelevant and should be excluded pursuant to Federal Rules of Evidence 401 and 402 as such evidence lacks any tendency to make the existence of a material fact more probable or less probable than it would be without the evidence. The issues in this case are whether Defendant Navez's use of force was reasonable. These issues are not advanced, even to a minimal degree, by evidence or argument regarding alleged membership in a gang.

Even if somehow relevant, any minimal probative value of this evidence is substantially outweighed by the prejudicial effect of such evidence and, as such, it should be excluded pursuant to Federal Rule of Evidence 403. The probative value of this evidence would be truly negligible. The alleged gang membership of Plaintiff Erick Fields is wholly removed from the issue of whether the Defendants violated Erick Fields's constitutional rights on February 24, 2011 by shooting him. *See United States v. Irvin*, 87 F.3d 860 (7th Cir. 1996) (noting minimal probative value of gang evidence in determining that district court erroneously admitted gang evidence).

In contrast, this evidence is highly prejudicial and inflammatory and the danger of unfair prejudice would substantially outweigh any probative value. The Seventh Circuit has repeatedly recognized the dangers of admitting gang evidence of this sort. *United States v. Rodriquez*, 925 F.2d 1049, 1053 (7th Cir. 1001) ("[E]vidence of membership in a street gang is likely to be 'damaging to [a defendant] in the eyes of the jury.' "); *United States v. Lewis*, 910 F.2d 1367 (7th Cir. 1990) (recognizing that gangs have a very negative image and poor public relations). Because of these obvious and attendant prejudices that necessary accompany the admission of gang evidence, the Seventh Circuit has "required careful consideration by district courts in

determining the admissibility of gang membership and gang activity evidence." *United States v. Irvin*, 87 F.3d at 865.

The thought of gang membership and the violence associated with gangs and the drug trade would anger almost every individual in society. This evidence would invite the jury to find against Plaintiff Erick Fields based on factors that are not germane to the issues of this case; possibly denying recovery solely because of Erick Field's alleged membership in a gang. *See United States v. Irvin*, 87 F.3d at 865-66 ("Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to persons who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict."). This evidence would suggest a result based on an improper emotional basis, or at the very least it would confuse the issues and mislead the jury to focus on collateral issues rather than the alleged actions of the Defendants. *United States v. Irvin*, 87 F.3d at 866. Jurors would be hard-pressed to award damages to an alleged former gang member, even if they believed he was wronged.

Finally, evidence of the Plaintiff Erick Fields's former alleged gang involvement would be inadmissible under Federal Rule of Evidence 404(b). A party cannot introduce evidence of an individual's other crimes, wrongs, or acts solely to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b). This gang evidence is classic negative character evidence and is not relevant to any material issue. Instead, its only use would be to impermissibly establish the general character of Plaintiff Erick Fields. Nor can this evidence be considered sufficiently reliable for admission under 404(b) as it is completely unconnected to the shooting at the heart of this complaint. Moreover, even if somehow crafted to appear probative to a material issue, the value of this evidence is substantially outweighed by the

substantial danger of confusion and unfair prejudice as it tends to subordinate reason to emotion in the fact-finding process by influencing the jury to deny or limit any recovery by Plaintiff Erick Fields because of Erick Fields's alleged prior gang membership.

Defendants claim that this may be relevant to bias between the testifying witnesses. There is, however, no evidence of any such evidence or bias that has been tendered during the discovery process. Nor can any credible claim of bias based on a former gang membership that was dissolved years earlier be made under the facts of this case. Finally, with this being a party attended by family and close friends, it is apparent that any attempt to establish a secondary level of bias based on this highly incendiary and highly irrelevant gang evidence would merely be a pretext to prejudice Plaintiffs.

*Plaintiff's Motion in Limine # 13*
*(Defendants object to this Motion in Limine)*

**Defendants should be barred from Eliciting or Presenting any Evidence Regarding Either the Charges of Drug Possession or the Conviction of Drug Possession by Erick Fields on February 24, 2011.**

The Police Officer Defendants should not be able to elicit any evidence regarding the charges of Possession of a Controlled Substance by Plaintiff Erick Fields in connection to the events of February 24, 2011 as the entry of such evidence is irrelevant to the case at bar and would be more prejudicial than probative to the allegations of the complaint. The Defendant Police Officers, and Officer Navez in particular, had no contemporaneous knowledge of the narcotics in question, the drugs did not provide the basis for Navez and Lomeli's entry on the property of the basis for their interaction with the Plaintiff Erick Fields. If the court were to permit the admission of evidence that Plaintiff Erick Fields had drugs on him on February 24, 2011 or that Erick Fields pled guilty to possession of controlled substances, the prejudicial effect against the Plaintiff would far outweigh the probative value of the evidence. The conviction for

Possession of a Controlled Substance is not relevant to the facts of this case and should not be admitted. Federal Rule of Evidence 401. Even if the evidence is determined to be relevant under Federal Rule of Evidence 401, it should be deemed inadmissible under Federal Rule of Evidence 403 as it is unduly prejudicial and not sufficiently probative of any relevant facts alleged in the complaint in this matter. *Gust v. Jones*, 162 F. 3d 587, 595 (10th Cir. 1998).

Under Federal Rule of Evidence 609(a), the conviction of a witness may be considered admissible, only after the evidence has been subjected to Federal Rule of Evidence 403 test for prejudice. *Gust v. Jones*, 162 F. 3d 587, 595 (10th Cir. 1998). In this matter, the Plaintiff Erick Fields is not on trial, the Defendants conduct on February 24, 2011 is. In balancing the analysis of the probative value against the prejudicial effect to the Plaintiff, the court in *Threzzy v. O'Leary*, 1991 U.S. Dist. LEXIS 1053 (N.D. Ill. January 31, 1991), found that where a prisoner was bringing a suit against jailers for treatment in prison, the prejudicial nature of admitting evidence regarding the possession of a controlled substance conviction for which he had been incarcerated outweighed the probative value of the evidence. *Id.* at 3. The court in *Threzzy* found that where the Plaintiff's crime did not involve dishonesty or a false statement, the evidence was inadmissible under Federal Rule of Evidence 609(a).

Should the Defendants seek to introduce the conviction to show that the Plaintiff is of a criminal character, the law is explicit. Federal Rule of Evidence 404(b) holds that where a crime, wrong, or other act is introduced into evidence for the purpose of proving that an individual acted in accordance with that bad act, the evidence should be held inadmissible. *Gust v. Jones*, 162 F. 3d 587, 596 (10th Cir. 1998).

Here, there is no probative value to the Possession of a Controlled Substance conviction to the allegations of the complaint made by the Plaintiff Erick Fields. The only purpose for

19

entering the conviction or proof thereof into evidence would be to disparage Mr. Fields and prejudice him in the eyes of the jury. There is no admitted or admissible evidence that the Police Officer Defendants had any foreknowledge of the narcotics, or even that Mr. Fields resided at that address or was in the garage at the time.

For the above reasons and according to the above law, the Plaintiff's conviction for Possession of a Controlled Substance under 2011 CR 0501601 should not be admitted into evidence.

*Plaintiff's Motion in Limine # 14*<br>*(Defendants object to this Motion in Limine)*

**To Bar The Testimony Of Defense Expert Witness R.T. Wyant.**

Plaintiff moves to exclude any testimony at trial from Defendant's proffered expert, R.T. Wyant. (A copy of his report is attached as Exhibit 1). The seminal question of fact on the excessive force claim is whether the jury believes that Erick Fields who was in his own garage changing a license plate on a vehicle in his garage, at the time Officer Navez peered into the north service door, Erick Fields turned, jumped to his feet, and leapt toward Officer Navez with the socket in his left hand before Defendant Officer Petain Navez shot Erick Fields in the abdomen. Erick Fields denies being crouched near the rear passenger side of his car in his garage. Erick Fields denies that he turned, jumped to his feet and leapt toward Officer Navez with the socket in his left hand.

R.T. Wyant's only opinions that are the physical evidence documented at the incident scene is consistent with the account reported by Officer Navez and that the physical evidence recovered at the scene does not support the statements made by Plaintiff Erick Fields. R.T. Wyant's testimony will not be helpful to the jury in deciding any fact of consequence in this case. His testimony is purely an attempt to inject a number of irrelevant and prejudicial opinions

20

that are not supported by any reliable methodology and have no bearing on the facts of this case. His testimony should be precluded pursuant to Federal Rules of Evidence 702 and 403. The court should bar R.T. Wyant as an expert witness because his opinions will not help the jury decide the question of whether Officer Navez used excessive force and are not supported by any reliable methodology.

Under Federal Rule of Evidence 702 a witness may provide expert testimony only where: (1) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data:" (3) "the testimony is the product of reliable principles and methods:" and (4) "the expert has reliably applied the principles and methods to the facts of the case." F.R.E. 702. Rule 702 thus requires that an expert opinion be based on "sound methodology" and "assist the trier of fact with a fact at issue." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869 (7th Cir. 2001), citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). The proponent of proposed expert testimony bears the burden of demonstrating that the testimony meets each of these requirements. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). When assessing whether proposed expert testimony is based on sound methodology, a court must "scrutinize the proposed expert witness testimony to determine if it has the same level of intellectual rigor that characterizes the practice of an expert in the relevant field so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012), citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). "Proof of expertise in the abstract" will not qualify a witness to render an expert opinion, and "[a] snappy resume does not ensure admissibility." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 934 (N.D. Ill. 2006). Expert testimony is admissible "only to the extent it is reasoned, uses the methods of the discipline, and is founded on data."

*Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). "Talking off the cuff-
deploying neither data nor analysis-is not an acceptable methodology." *Id.* "A witness who
invokes 'my expertise' rather than analytic strategies widely used by specialist is not an expert as
Rule 702 defines the term." *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d
416, 419 (7th Cir. 2005). When it comes to scientific testimony, the reliability of the proposed
expert's methodology depends on: "(1) whether the proffered theory can be and has been tested;
(2) whether the theory has been subjected to peer review; (3) whether the theory has been
evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the
relevant scientific community." *Dhillon*, 269 F.3d at 869, citing *Daubert*, 509 U.S. at 593-94.
The reliability of the proposed expert's opinion also depends on whether he has reliably applied
his methodology to the facts of the case. *Nimely v. City of New York*, 414 F.3d 381, 397-98 (2d
Cir. 2005) (noting that reliability requires a showing of a sufficiently rigorous analytical
connection between the methodology and the conclusions drawn by the expert). If the
underlying data, methodology or studies are inadequate to support the expert's conclusions, then
the expert's testimony will be deemed inadmissible. *Nimely*, 414 F.3d at 396-97 (recognizing
that a "court may conclude that there is simply too great an analytical gap between the data and
the opinion proffered"). Thus, an expert witness's testimony may be excluded where such
testimony is "imprecise and unspecific" or the factual basis for that opinion is not adequately
elaborated. *Cook v. Sheriff of Monroe County, Florida*, 402 F.3d 1092 (11th Cir. 2005).

To be helpful to the trier of fact, proposed expert testimony must concern a matter
beyond the understanding and province of the jury. As the Seventh Circuit has explained,
"an expert must testify to something more than what is obvious to the layperson in order to
be of any particular assistance to the jury." *Dhillon*, 269 F.3d at 871; see also *Davis v.*

_Duran_, 277 F.R.D. 362, 366-67 (N.D. Ill. 2011). Likewise, it is not helpful for a proposed expert to weigh evidence or make credibility determinations, as these tasks are exclusively for the jury. _Giuffre v. Jefferson_, No. 14 C 3692, 2017 WL 951239, at ¶ 2 (N.D. Ill. Mar. 10, 2017) ("expert testimony cannot be offered merely for the purpose of bolstering the credibility of a party's version of the facts," because such testimony does not help the jury understand the evidence and "usurps the jury's role by wrapping the lay witness in the expert's prestige and authority"); see also _Nunez v. BNSF Railway Co._, 730 F.3d 681,684 (7th Cir. 2013) ("vouching for a lay witness is not expert testimony"); _Richman_, 415 F. Supp. 2d at 942 ("a witness's credibility is not an appropriate subject matter for expert testimony").

The opinion testimony of R.T. Wyant that the location of the physical evidence does not support the statements by Fields and supports the statements made by Navez is a backdoor attempt by the Defendant Navez to support his contention that he used reasonable force in shooting Erick Fields in Erick Fields's garage. Opinion testimony that an officer used reasonable force presents a legal conclusion that will not assist the jury in understanding the fact at issue. _Thomas v. Landrum_, No. 11 C 09275, 2014 WL 11370447, at ¶ 1 (N.D. Ill. Mar. 18, 2014) citing _Thompson v. City of Chicago_, 472 F.3d 444, 458 (7th Cir. 2006) (proposed expert testimony on whether defendant used excessive force "would have been of little value except as to possibly causing confusion," as the jury "was in as good a position as the experts to judge whether the force used by the police officer to subdue Plaintiff was objectively reasonable").

Here, R.T. Wyant's conclusion and opinion that the physical evidence documented at the incident scene is consistent with the account reported Officer Navez and does not

support the statements made by Plaintiff Erick Fields is only being offered for the purpose of bolstering the credibility of a party's version of the facts and is not admissible because such testimony does not help the jury understand the evidence and usurps the jury's role by wrapping the lay witness in the expert's prestige and authority. The witness's credibility is not an appropriate subject matter for expert testimony. The crux of R.T. Wyant's testimony essentially boils down to the opinion that, assuming Officer Navez's version of events is true, he would have been justified in firing at a suspect that was holding a ratchet. This obvious conclusion will be of no help to the jury. *McCloughan v. City of Springfield*, 208 F.R.D. 236, 240 (C.D. Ill. 2002) ("the Court does not believe that a jury needs an expert witness to tell them that it is improper, under proper police procedure or even common decency-to kick someone in the head when he is being restrained on the ground"). Instead of helping the jury, R. T. Wyant's opinion is simply a vehicle to bolster Officer Navez's credibility with the endorsement of an expert, and to prejudice Plaintiff with irrelevant testimony in a number of areas, including: (1) improper opinions concerning Plaintiff's credibility; (2) generalized conjecture, statistics, and scientific opinions that are not supported by any articulable methodology or reliably applied to the specific facts of this case. Also, it should be noted that no evidence was examined by R.T. Wyant. R.T. Wyant did not examine the ratchet, the coat that Erick Fields was wearing on the night that he was shot, the bullet recovered at the scene, and the shell casing recovered at the scene.

For example, R.T. Wyant weighs the evidence throughout his report See, e.g., Ex. 1 at p. 10 ("the socket wrench is in line with the possible trajectory between the doorway and the recovered bullet and the location of the fired cartridge case along the north wall places the shot near the doorway which supports Officer Navez's account of being at the doorway

and the location of physical evidence within the garage supports statements made by Officer Navez.") These opinions are plainly impermissible. *Nunez*, 730 F.3d at 684; *Guiffre*, 2017 WL 951239, at ¶ 2. R.T. Wyant fails to meet each of the requirements of Rule 702 and his testimony would only serve to confuse the issues and prejudice Plaintiff under Rule 403.

*Plaintiff's Motion in Limine #15*
*(Defendants object to this Motion in Limine)*

**To Bar the Testimony Of Defense Expert Witness Robert T. Johnson**

The Plaintiff moves to exclude any testimony at trial from Defendants' proffered expert Robert T. Johnson. (A copy of his report is attached hereto as Exhibit 2). The seminal question on the excessive force claim is whether the jury believes the testimony from Defendant Navez that Plaintiff Erick Fields moved towards the door of the garage and placed Navez in a reasonable fear for his life. Erick Fields has denied that he made any such movements towards Navez or the door Navez leapt through and further denies having had any weapon in his hands at the time. Johnson's testimony will not be helpful to the jury in deciding any fact of consequence in this case. His testimony seeks only to enter irrelevant and prejudicial opinions that are not supported by reliable methodology and have no bearing on the facts of this case. Johnson's testimony should be precluded pursuant to Rules 702 and 403 as improper expert testimony and more prejudicial than probative to the facts of the case. The Court should bar Johnson as an expert witness because his opinions will be of no assistance to the jury in determining whether the Navez used excessive force and are not supported by any reliable methodology. Under Federal Rule of Evidence 702 a witness may provide expert testimony only where: (1) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and

25

methods to the facts of the case." F.R.E. 702. Rule 702 thus requires that an expert opinion be based on "sound methodology" and "assist the trier of fact with a fact at issue." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869 (7th Cir. 2001), *citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). The proponent of proposed expert testimony bears the burden of demonstrating that the testimony meets each of these requirements. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

When assessing whether proposed expert testimony is based on sound methodology, a court must "scrutinize the proposed expert witness testimony to determine if it has the same level of intellectual rigor that characterizes the practice of an expert in the relevant field so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012), *citing Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 152 (1999). "Proof of expertise in the abstract" will not qualify a witness to render an expert opinion, and "[a] snappy resume does not ensure admissibility." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 934 (N.D. Ill. 2006). Expert testimony is admissible "only to the extent it is reasoned, uses the methods of the discipline, and is founded on data." *Lang v. Kohl's Food Stores, Inc.,* 217 F.3d 919, 924 (7th Cir. 2000). "Talking off the cuff–deploying neither data nor analysis–is not an acceptable methodology." *Id.* "A witness who invokes 'my expertise' rather than analytic strategies widely used by specialist is not an expert as Rule 702 defines that term." *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). When it comes to scientific testimony, the reliability of the proposed expert's methodology depends on: "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4)

whether the theory has been accepted in the relevant scientific community." *Dhillon*, 269 F.3d at 869, *citing Daubert*, 509 U.S. at 593-94.

The reliability of the proposed expert's opinion also depends on whether he has reliably applied his methodology to the facts of the case. *Nimely v. City of New York*, 414 F.3d 381, 397-98 (2d Cir. 2005) (noting that reliability requires a showing of a sufficiently rigorous analytical connection between the methodology and the conclusions drawn by the expert). If the underlying data, methodology or studies are inadequate to support the expert's conclusions, then the expert's testimony will be deemed inadmissible. *Nimely*, 414 F.3d at 396-97 (recognizing that a "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered"); *see also General Electric Co. v. Jiner*, 522 U.S. 136, 146 (1997). Thus, an expert witness's testimony may be excluded where such testimony is "imprecise and unspecific" or the factual basis for that opinion is not adequately elaborated. *Cook v. Sheriff of Monroe County, Florida*, 402 F.3d 1092 (11th Cir. 2005).

To be helpful to the trier of fact, proposed expert testimony must concern a matter beyond the understanding and province of the jury. As the Seventh Circuit has explained, "[a]n expert must testify to something more than what is obvious to the layperson in order to be of any particular assistance to the jury." *Dhillon*, 269 F.3d at 871; *see also Davis v. Duran*, 277 F.R.D. 362, 366-67 (N.D. Ill. 2011). Likewise, it is not helpful for a proposed expert to weigh evidence or make credibility determinations, as these tasks are exclusively for the jury. *Giuffre v. Jefferson*, No. 14 C 3692, 2017 WL 951239, at * 2 (N.D. Ill. Mar. 10, 2017) ("[e]xpert testimony cannot be offered merely for the purpose of bolstering the credibility of a party's version of the facts," because such testimony does not help the jury understand the evidence and "usurps the jury's role by wrapping the lay witness in the expert's prestige and authority"); *see also Nunez v.*

_BNSF Railway Co._, 730 F.3d 681, 684 (7th Cir. 2013) ("[v]ouching for a lay witness is not expert testimony"); _Richman_, 415 F. Supp. 2d at 942 ("a witness's credibility is not an appropriate subject matter for expert testimony").

Similarly, opinion testimony that an officer used reasonable force presents a legal conclusion that will not assist the jury in understanding a fact at issue. _Thomas v. Landrum_, No. 11 C 09275, 2014 WL 11370447, at *1 (N.D. Ill. Mar. 18, 2014), _citing Thompson v. City of Chicago_, 472 F.3d 444, 458 (7th Cir. 2006) (proposed expert testimony on whether defendant used excessive force "would have been of little value except as to possibly causing confusion," as the jury "was in as good a position as the experts to judge whether the force used by the officers to subdue [plaintiff] was objectively reasonable").

Johnson's findings in his report provide only generalized law enforcement experience and an impressive law enforcement resume and does not offer any scientific or objective basis that is relevant to the facts of this case. Rather, Johnson offers overbroad conclusions gleaned from the testimony of the officers, and an obvious disregard for the testimony of the Plaintiff Erick Fields or Ursula Pepin. Johnson presumes that the Police Officers and the Defendants' versions of events are true and that Navez actions were justified. This obvious conclusion will be of no help to the jury. _McCloughan v. City of Springfield_, 208 F.R.D. 236, 240 (C.D. Ill. 2002) ("the Court does not believe that a jury needs an expert witness to tell them that it is improper–under proper police procedure or even common decency–to kick someone in the head when he is being restrained on the ground"). Indeed, this opinion is simply a restatement of the legal standards for the use of force, which can be addressed in jury instructions. See Ex. 2 at pp. 8-9 (discussing Supreme Court precedent regarding the use of force). Instead of helping the jury, Johnson's opinion is simply a vehicle to bolster the Police Officers and Police Officer

Defendants' credibility with the endorsement of an expert, and to prejudice Plaintiff with irrelevant testimony in a number of areas, including: (1) improper opinions concerning Plaintiff's credibility; (2) anecdotes regarding threats faced by law enforcement in extreme, inapplicable circumstances; and (3) generalized conjecture, statistics, and scientific opinions that are not supported by any articulable methodology or reliably applied to the specific facts of this case.

In Johnson's opinion on the use of deadly force, he engages in generalities and anecdotes ranging from the use of force to metallic sounds in order to arrive at his conclusion that the shooting of Erick Fields was justified. Ex 2 at P 10-14. Johnson's opinions of what an officer may or may not do, see, hear, or feel in a stressful situation are irrelevant to the facts of this case and improper opinion testimony. Further, Johnson weighs the evidence throughout his report as if he were providing an argument for the Defense. Johnson goes on, quoting the testimony of the Defendant to formulate his opinion, ("Fields failed to comply...failed to show his hands, took no physical or verbal actions indicative that he intended to comply" p. 12,) Johnson steps in to the shoes of the defendant to give credence to his version of events. ("The rounded ends of the socket...could easily be perceived as resembling the barrel of a fire arm." p.12), ("[the] location of the car amongst the clutter in the garage, coupled with a subject crouched down by the rear passenger side wheel of the vehicle could be perceived as someone who was hiding. p. 12). The opinion on the officers making entry, much like the opinion on excessive force, only serves to parrot and lend the weight of an expert to the testimony of the Officer witnesses and the Officer Defendants. Johnson's opinion does not provide any insight beyond that of the officers involved nor does it provide an objective standard by which to measure their conduct. These opinions are plainly impermissible. _Nunez_, 730 F.3d at 684; _Giuffre_, 2017 WL 951239, at * 2.

Johnson also attaches to his opinion what appears to be an excerpt from a trade journal, the FBI Law Enforcement Bulletin. This contains extensive anecdotes regarding the effects on officers in an article entitled Officer Involved Shootings: Memory, Stress, and Time. These additions do not serve to provide the jury in this case with any relevant, factual, or admissible expert testimony, but would only serve to engender the sympathy of the jury to the Defendant Police Officers. These entries should be excluded as irrelevant and unhelpful under F.R.E. 702, and prejudicial under F.R.E. 403.

Johnson's conclusions and opinions that the witness police officers and defendant police officers' versions of events serve as the justification for the use of force against Erick Fields and for their entry onto his property are only offered here to sway the jury on their determination of credibility of those witnesses and their statements. Expert opinion testimony that an officer's use of force was reasonable is a legal conclusion that will not aid the jury in understanding a fact at issue.

Johnson fails to meet each of the requirements of Rule 702, and his testimony would only serve to confuse the issues and prejudice Plaintiff's under Rule 403.

Dated: March 19, 2018                                   Respectfully Submitted:

By: /s/ Christopher Bargione
Christopher Bargione (#6185177)
Collins Bargione & Vuckovich
One North LaSalle Street, Suite 300
Chicago, Illinois 60602
(312) 372-7813

Attorney for Plaintiff Erick Fields

30