UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERICK FIELDS,                          )
                                       )
        Plaintiff,                     )
                                       )        No. 12 C 1306
    v.                                 )
                                       )        Chief Judge Rubén Castillo
THE CITY OF CHICAGO, et al.,           )
                                       )
        Defendants.                    )
                                       )
                                       )

## MEMORANDUM OPINION AND ORDER

Before the Court are motions in limine ("MILs") filed by Plaintiff Erick Fields and

Defendants the City of Chicago and Chicago police officers Petain Navez, Jose Lomeli, Steven

Rivera, Manuel Guzman, Rogelio Pinal, Robert Cavaini, Brian Spreng, Matthew Graf, Michael

Burke, Nicholas Orlando, Frank Pierri, Kenneth Barnas, Brian Tedeschi, Albert Perez, Donald

Falk, Anthony Noradin, Ronald Banas, and other "unknown Chicago police officers." (R. 110;

R. 112.) For the reasons stated below, the MILs are granted in part and denied in part.

## BACKGROUND

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants

for the alleged deprivation of his constitutional rights. (R. 66, Second Am. Compl.) Plaintiff

alleges that, on February 24, 2011, he was in his garage removing a license plate from his car

when Defendants Navez and Lomeli entered and Navez shot Plaintiff in the abdomen without

provocation. (*Id.* ¶¶ 10-17.) Plaintiff alleges that, after he was shot, no ambulance was called,

and instead Defendants Rivera, Guzman, and Pinal conferred with Navez and Lomeli about how

to respond to the situation, delaying and obstructing Plaintiff's efforts to call for an ambulance

and obtain medical treatment. (*Id.* ¶¶ 19-29.) After Plaintiff was eventually taken to the hospital, he alleges that unknown Chicago police officers searched his home without a warrant or probable cause, leaving his home in disarray and damaging his property. (*Id.* ¶¶ 30-39.) Defendants dispute this account and claim that Navez feared for his life after Plaintiff allegedly lunged toward him with a "silver object," which Navez believed to be the barrel of a gun but turned out to be a wrench. (R. 108, Defs.' L.R. 56.1 Statement ¶ 36.)

Plaintiff brings three claims under 42 U.S.C. § 1983 for deprivation of his constitutional rights based on Defendants' alleged use of excessive force, Defendants' alleged unlawful entry into his home, and Defendants' alleged conspiracy to deprive him of his constitutional rights.[1] (*Id.* ¶¶ 51-72.) Plaintiff also brings state claims under Illinois law for battery, intentional infliction of emotional distress, and trespass. (*Id.* ¶¶ 73-89.) A jury trial in this case is currently scheduled to begin April 16, 2018. (R. 100, Min. Entry.)

## LEGAL STANDARDS

Trial courts have considerable discretion to manage the submission of evidence, including granting motions in limine. *See Luce v. United States*, 469 U.S. 38, 41 (1983); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). In limine rulings serve "to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Such motions are not favored, however, and the Court should grant a motion in limine only when the evidence at issue "is clearly inadmissible on all potential grounds." *Gomez v. Palmer*, No. 11 C 1793, 2016 WL 212800, at *1 (N.D. Ill. Jan. 19, 2016). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential

---

[1] Plaintiff voluntarily dismissed with prejudice two claims in his second amended complaint, which also asserted deprivations of his constitutional rights pursuant to Section 1983. (R. 101, Min. Entry.)

prejudice may be resolved in proper context." *United States v. Lillie*, 669 F. Supp. 2d 903, 905 (N.D. Ill. 2009) (citation omitted). Additionally, the Court has authority to reconsider its rulings on motions in limine as "the case unfolds." *Luce*, 469 U.S. at 41. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Id.* at 41-42 (italics omitted); *see also Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006) ("[T]he district court may adjust a motion in limine during the course of a trial."). "The party seeking to exclude evidence has the burden of demonstrating that the evidence would be inadmissible for any purpose." *United States Sec. & Exch. Comm'n v. Berrettini*, No. 10-CV-1614, 2015 WL 4247776, at *1 (N.D. Ill. July 14, 2015).

Under Federal Rule of Evidence 401, evidence is deemed relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401(a)-(b). Under Federal Rule of Evidence 403, the Court has authority to exclude relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. With these standards in mind, the Court addresses Plaintiff's and Defendants' MILs separately below.

## ANALYSIS

### I. Plaintiff's MILs

#### A. MILs # 1, 2, 5, 6, 10, and 12: Irrelevant and Unfairly Prejudicial Matters

Plaintiff argues that several categories of evidence and arguments should be excluded as either irrelevant or because their probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. First, in MIL #1, Plaintiff argues

that the Court should bar Defendants from introducing evidence or arguments that Defendant police officers would suffer negative consequences in their professional careers due to the trial's outcome. (R. 110, Pl.'s Mot. at 1-2.) The Court agrees that such evidence or argument is irrelevant and its probative value, if any, is far outweighed by a danger of prejudice and confusion of the issues. *See* FED. R. EVID. 401, 402, 403. The claims in this case concern Defendants' conduct towards Plaintiff as well as Plaintiff's request for monetary damages, and any damage to Defendants' careers is wholly irrelevant and prejudicial. The Court, however, will permit Defendants to testify as to their potential personal liability in this case, but any such testimony will allow Plaintiff to counter with evidence or argument that the City of Chicago will indemnify them. *See Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *7 (N.D. Ill. June 12, 2015) ("Defendants cannot argue poverty and avoid telling the jury that they are partially indemnified."). Accordingly, MIL #1 is granted in part and denied in part.

Plaintiff's MIL #2 asks the Court to exclude any evidence or argument regarding gun violence, generally, in Chicago. (R. 110, Pl.'s Mot. at 2.) The question of whether an officer is liable under Section 1983 is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The nature and extent of the force that may be used depends upon the circumstances surrounding the arrest, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citation and internal quotation marks omitted). Evidence about general gun violence in Chicago, divorced from the specific facts of this case, has little to do with the circumstances surrounding Plaintiff's

shooting or whether Defendants acted reasonably in those circumstances. *See* FED. R. EVID. 401, 402, 403. Nor is there any indication that general gun violence in Chicago relates to any of the elements of Plaintiff's state law claims.[2] The Court, therefore, grants MIL #2.

Turning to MIL #5, Plaintiff argues that the Court should exclude evidence portraying his neighborhood as a "high crime" area. (R. 110, Pl.'s Mot. at 5-7.) The Court disagrees, and denies MIL # 5 because whether Plaintiff's neighborhood is a "high crime" area is relevant to determine whether Defendants' actions were "objectively reasonable *in light of the facts and circumstances in which*" they "*were confronted*[.]" *Edwards v. Two Unknown Male Chi. Police Officers*, 623 F. Supp. 2d 940, 948 (N.D. Ill. 2009) (emphasis added); *see also Flournoy v. City of Chicago*, 829 F.3d 869, 875 (7th Cir. 2016) (considering, in an excessive force case, that the "suspect's apartment was . . . known to be in a high-crime area"). The Court does not consider this evidence so prejudicial and confusing to warrant exclusion under Rule 403. *See Ross v. City of Chicago*, No. 13 C 751, 2014 WL 1344279, at *2 (N.D. Ill. Apr. 3, 2014) ("Ross has not shown that [he] will be prejudiced merely by [a] description of the area of the Shooting, and Ross's claim that the trier of fact will conclude that Devon Ross deserved to be shot because of the area where he was shot is pure speculation on the part of Ross.").

Next, MIL #6 argues that the Court should bar any prosecutor or attorney from opining on the elements of criminal offenses or civil claims, or the propriety of Defendants' conduct in

---

[2] *See Dakhlallah v. Zima*, 42 F. Supp. 3d 901, 918 (N.D. Ill. 2014) ("To establish a trespass, Plaintiff must prove wrongful interference with his actual possessory right in the property." (citation and internal quotation marks omitted)); *Parks v. City of Chicago*, No. 09 C 5683, 2012 WL 4049359, at *1 (N.D. Ill. Sept. 13, 2012) ("Civil battery in Illinois is defined as having two elements: (1) intention to cause harmful or offensive contact with the person of another; and (2) resulting in harmful contact."); *Bianchi v. McQueen*, 58 N.E.3d 680, 699 (Ill. App. Ct. 2016) (noting that the elements for an intentional infliction of emotional distress claim under Illinois law are: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." (citation omitted)).

this case. (R. 110, Pl.'s Mot. at 7-9.) The Court agrees. The relevant inquiry in this case is whether Defendants' alleged shooting of Plaintiff and entry into his home rise to the level of a deprivation of constitutional rights, battery, trespass, or intentional infliction of emotional distress. The opinion of a state's attorney or other person lacking personal knowledge of the incident at issue is irrelevant, unfairly prejudicial, and inadmissible opinion evidence. *See* FED. R. EVID. 401, 402, 403; *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009) ("We have held repeatedly that lay testimony offering a legal conclusion is inadmissible because it is not helpful to the jury[.]"). Therefore, MIL # 6 is granted.[3]

Turning to MIL #10, Defendants do not object to this motion, and therefore the Court grants Plaintiff's request to exclude any evidence or argument that Plaintiff's medical bills have been paid by third parties. *See Torres v. City of Chicago*, No. 12 C 7844, 2015 WL 12843889, at *4 (N.D. Ill. Oct. 28, 2015) ("The plaintiffs' unopposed request to bar the defendants from informing the jury that their medical expenses were covered by insurance and to redact line items on medical bills that reflect insurance coverage is granted.").

MIL #12, which asks the Court to bar any evidence regarding Plaintiff's past membership in or affiliation with a gang, (R. 110, Pl.'s Mot. at 12), is also granted because the probative value of such evidence is substantially outweighed by a danger of unfair prejudice. *See Gomez*, 2016 WL 212800, at *4 (excluding as overly prejudicial evidence of the plaintiff's gang affiliations); *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 817 (N.D. Ill. 2010) (observing that evidence or suggestions that a plaintiff was in a gang "is routinely excluded").

---

[3] Defendants argue that they should be permitted to have a prosecutor testify as to the disposition of Plaintiff's misdemeanor charges if Plaintiff seeks to introduce any evidence relating to the disposition of such charges, but the Court does not read Plaintiff's MIL #6 to deal with this issue.

**B.     MILs # 3, 11, 13: Prior Arrests, Convictions, and Encounters with the Police**

The next category of MILs relate to Plaintiff's prior arrests, criminal convictions, or other encounters with the police outside of the incident that occurred on February 24, 2011. (R. 110, Pl.'s Mot. at 2-3, 13-15, 18-20.) "Prior arrests are usually inadmissible under Federal Rule of Evidence 403, which bars evidence when its probative value is outweighed by its risk of prejudice, and Federal Rule of Evidence 404(b), which provides, 'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith,' but 'may . . . be admissible for other purposes.' " *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1024 (N.D. Ill. 2011) (citation omitted). There is no indication that Plaintiff's prior arrests are in any way related to Plaintiff's claims, the risk of such evidence prejudicing Plaintiff is significant, and the Court fails to see how this evidence would be used other than to attack Plaintiff's character; therefore, evidence of Plaintiff's prior arrests is inadmissible under Rules 403 and 404. *See id.* Plaintiff's claim for intentional infliction of emotional distress also provides no grounds for admitting evidence related to Plaintiff's prior arrests. *Norris v. Bartunek*, No. 15 C 7306, 2017 WL 4556714, at *4 (N.D. Ill. Oct. 12, 2017) ("There is some support for the proposition that prior arrests may be admissible when a plaintiff claims that an arrest caused him emotional distress. But even courts that have recognized prior arrests may be admissible under those circumstances have required that the arrests be substantially similar and conducted a prejudice analysis." (citation omitted)). Plaintiff's prior encounters with police officers that did not lead to any arrest or conviction are inadmissible under Rules 403 and 404 for the same reasons as Plaintiff's prior arrests, and therefore, the Court grants MIL #3. *See Betts*, 784 F. Supp. 2d at 1024; *see also Barber v. City of Chicago*, 725 F.3d

702, 709 (7th Cir. 2013) ("The well-established, general rule is that a witness's credibility may not be impeached by evidence of his or her prior arrests, accusations, or charges.").

MIL #11 and #13 deal with, respectively, Plaintiff's conviction for attempted murder in 1999 and a conviction for possession of controlled substances on the date of the incident in question. (R. 110, Pl.'s Mot. at 13-15, 18-20.) Federal Rule of Evidence 609(a)(1) allows the use of a witness' prior criminal conviction to attack his or her character for truthfulness if the conviction was for "a crime that . . . was punishable by death or by imprisonment for more than one year," however, the Court may exclude such evidence if its probative value is substantially outweighed by its prejudicial effect. FED. R. EVID. 609(a)(1), 403; *see also Blackwell v. Kalinowski*, No. 08 C 7257, 2011 WL 1557542, at *2 (N.D. Ill. Apr. 25, 2011) (applying Rules 609 and 403 in a Section 1983 case). Rule 609, however, provides that if more than ten years have passed since a witness' conviction, evidence of the conviction is admissible only if: "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." FED. R. EVID. 609(b).

The Court finds that Plaintiff's 1999 conviction for attempted murder is inadmissible because Defendants have failed to show that its probative value substantially outweighs its prejudicial effect. *See id.* Plaintiff's conviction for a crime almost 20 years ago has little probative value to his credibility or to the incident in this case, which was allegedly triggered by Defendants responding to gunshots fired and seeing an abandoned car near Plaintiff's home. (*See* R. 107, Mot. for Summ. J. at 3; R. 106-2, Navez Dep. Tr. at 100-05.) The severity of the crime—attempted murder—would cause significant unfair prejudice to Plaintiff that far outweighs any probative value of Plaintiff's conviction. *See id.*; *United States v. Rogers*, 542 F.3d 197, 201 (7th

Cir. 2008) ("[W]e have said that impeachment by a conviction falling outside the rule's ten-year time limit should be permitted only in rare and exceptional circumstances.").

Unlike Plaintiff's 1999 conviction, his conviction for felony drug possession occurred more recently, and it was based on drugs discovered inside Plaintiff's clothing while he was at the hospital following his encounter with Defendants on February 24, 2011. (*See* R. 106-4, Fields Dep. Tr. at 226-28; R. 108, Defs.' L.R. 56.1 Statement ¶ 27.) That drugs were found in Plaintiff's clothing after he had been shot and was taken to the hospital, however, has little to do with the claims in this case, which concern Defendants' use of force and entry into Plaintiff's home before they found any drugs in his clothing. (*See* R. 66, Second Am. Compl. ¶¶ 10-89; R. 107, Mot. for Summ. J. at 3; R. 106-2, Navez Dep. Tr. at 100-05.) Again, Plaintiff's Section 1983 claims are only concerned with objective circumstances related to Plaintiff's encounter with police and not the events thereafter. *See Stainback*, 569 F.3d at 772. Nor do Plaintiff's state law claims implicate any drugs found in his clothing after he was shot and taken to the hospital.[4] There is no indication that any of the events giving rise to Plaintiff's claims were related to his possession of drugs on that day as opposed to reports of gunshots fired near his home; therefore, the Court excludes evidence relating to Plaintiff's felony drug conviction because its probative value is far outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. *See* FED. R. EVID. 403, 609(a); *United States v. Galati*, 230 F.3d 254, 262 (7th Cir. 2000) ("In this case, the district judge wisely gauged the potential for jurors to see Sims' prior drug possession conviction as a reason to discount her entire testimony, even though nothing about her conviction actually suggests the likelihood that she would be dishonest or deceitful.").

---

[4] *See Dakhlallah*, 42 F. Supp. 3d at 918; *Parks*, 2012 WL 4049359, at *1; *Bianchi*, 58 N.E.3d at 699.

The Court is not persuaded by the cases Defendants rely on to admit evidence of Plaintiff's prior drug conviction. Unlike *Doornbos v. City of Chicago*, 868 F.3d 572 (7th Cir. 2017), in which the plaintiff's conviction for possessing a small amount of cannabis created only a minimal risk of prejudice, Plaintiff's possession of a controlled substance here resulted in a felony conviction and is more prejudicial. *Id.* at 577. Additionally, in *Doornbos*, the plaintiff fled from the police, so the conviction was relevant to explain why he fled whereas here Plaintiff did not flee and it is not even clear that Plaintiff knew Defendant Navez was a police officer. *See id.* at 575.[5] In *Common v. City of Chicago*, 661 F.3d 940 (7th Cir. 2011), the defendants used plaintiff's conviction for possession and ingestion of controlled substances to explain and corroborate the plaintiff's alleged concealment of such controlled substances when he refused to raise his hands in the air after being directed to do so three times, and to rebut his testimony that he immediately complied with police directives to put his hands in the air. *Id.* at 943. Unlike *Common*, Defendants' actions were far removed from any suspicion of a drug-related crime and there is little evidence that Plaintiff was fearful that police officers would find controlled substances already concealed within his clothing. (*See* R. 108, Defs.' L.R. 56.1 Statement ¶ 27.) The evidence related to Plaintiff's drug possession on the date of the incident in question, unlike *Common* or *Doornbos*, is simply far too removed from the claims in this case and risks too much confusion and prejudice in relation to its minimal probative value. *See* FED. R. EVID. 403, 609; *Case v. Town of Cicero*, No. 10 C 7392, 2013 WL 5645780, at *2 (N.D. Ill. Oct. 16, 2013)

---

[5] (*See* R. 106-2, Navez Dep. Tr. at 133 ("Q. . . . And at no time prior to putting your head inside the garage did you announce who you were, correct? A. Correct."), 141 (Navez testifying that he did not hear anything from Plaintiff except an expletive after Navez finally announced his presence, and that Plaintiff "spun around" before he jumped towards Navez), 144 (Navez testifying that "[f]our seconds maybe" elapsed between the time when he finally announced his presence and then discharged his weapon); R. 160-3, Lomeli Dep. Tr. at 76 (testifying that "seconds" or a "short time" elapsed between when Navez announced his presence and discharged his weapon); R. 106-4, Fields Dep. Tr. at 170 ("Q. . . . Could you tell that person was a police officer[?] A. No.").)

("Testimony on a witness's crime that coincided with the plaintiff's allegations runs the risk of tainting the jury's view of the plaintiff and potentially confusing the jury on the relevant issues."); *Jackson v. Webb*, No. 1:11-CV-09, 2012 WL 3204608, at *3 (N.D. Ind. Aug. 3, 2012) ("[S]ignificant prejudice or confusion could arise if the jury seeks to retroactively gauge the reasonableness of Webb's use of force against the knowledge that criminal charges were later lodged by the prosecuting attorney."). Accordingly, the Court grants MILs #11 and #13.[6]

### C. MIL #4: Treating Chicago Police Officers as Hostile Witnesses

MIL #4 asks that the Court allow Plaintiff to treat all non-Defendant Chicago police officers as hostile witnesses pursuant to Federal Rule of Evidence 611. (R. 110, Pl.'s Mot. at 4.) Under Rule 611, a party may use leading questions when he "calls a hostile witness, an adverse party, or a witness identified with an adverse party." FED. R. EVID. 611(c)(2). "When the city is a defendant to a § 1983 claim, police officers employed by the city and who were present during portions of the incident at issue are clearly qualified as a witness identified with an adverse party." *Ratliff v. City of Chicago*, No. 10 C 739, 2012 WL 7993412, at *1 (N.D. Ill. Nov. 20, 2012) (citation and internal quotation marks omitted)). The Court, therefore, grants MIL #4, and will allow Plaintiff to treat all non-Defendant Chicago police officers as hostile witnesses pursuant to Rule 611.

### D. MIL #8: Jury Instructions Prior to Opening Statements

MIL #8 asks that the Court provide jury instructions on the issues of excessive force and the preponderance of the evidence standard before the parties' opening statements. (R. 110, Pl.'s

---

[6] Defendants argue that Plaintiff "may also attempt to argue that he is a law abiding citizen," (R. 116, Defs.' Resp. at 6), but at this juncture, the Court declines to address a hypothetical situation. If Plaintiff opens the door to evidence of his prior convictions, Defendants may ask the Court to revisit its ruling.

Mot. at 11.) The Court grants this request because it may substantially assist the jury's comprehension of the trial testimony.

### E.    MIL #9: Questions from the Jury to Witnesses

In MIL #9, Plaintiff requests that the Court permit the jury to submit written questions to each witness following the witness' examination. (R. 110, Pl.'s Mot. at 11-12.) This request is granted, but the Court notes that such questions must be reviewed by the parties and the Court to determine whether they are admissible. *S.E.C. v. Koenig*, 557 F.3d 736, 742 (7th Cir. 2009) (observing that courts may permit the jurors to ask questions, but that a "judge should serve as a filter for questions and eliminate or rephrase those that are irrelevant or disguised argument").

### F.    MILs # 7, 14, and 15: Defendants' Opinion Testimony

In MILs #14 and #15, Plaintiff requests that the Court bar the opinion testimony of Defendants' experts R.T. Wyant and Robert Johnson, respectively, because their testimony will not assist the jury. (R. 110, Pl.'s Mot. at 20-30.) The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). "In performing its gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (citation and internal quotation marks omitted). "It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (citation and internal quotation marks omitted). To be of any assistance to the jury, an expert "must testify to something more than what is obvious to the layperson[.]" *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (citation omitted); *see also Sullivan v. Alcatel-Lucent USA Inc.*,

No. 12 C 07528, 2014 WL 3558690, at *6 (N.D. Ill. July 17, 2014) ("Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." (citation and internal alteration omitted)).

Wyant is a forensic scientist that specializes in shooting scene reconstruction. (R. 110-1, Wyant Report at 11.) Since 2006, he has taught a course at the U.S. Alcohol, Tobacco, Firearm, and Explosives Bureau's National Firearms Examiner Academy in Maryland that offers instruction on the operation, use, and capabilities of various firearms. (*Id.*) He has also published peer-reviewed papers related to use of weapons that are "less lethal" than firearms. (*Id.* at 12.) He has testified over 150 times as a "forensic expert in firearm operation, firearm identification, tool mark examination, shooting reconstruction[,] and less lethal weapons." (*Id.*) In his report, Wyant opines that "[t]he physical evidence documented at the incident scene is consistent with the account reported by [Defendant] Navez." (*Id.* at 1.) He also opines, after summarizing evidence in this case, that Fields was "seven feet or closer" to Navez when Navez discharged his weapon, based upon where the bullet, wrench, and bullet casings were recovered. (*Id.*) Wyant arrives at these conclusions by reviewing physical evidence recovered at the scene of the shooting, by analyzing crime laboratory reports, by reviewing a three-dimensional scan of Plaintiff's garage, by reviewing witness statements, and by reviewing the medical records that indicate the location of the entrance and exit wound of the bullet that struck Plaintiff. (*Id.* at 2-11.)

At bottom, Wyant's testimony attempts to weigh factual disputes that the jury does not need help to resolve. "An expert witness may not usurp the jury's function to weigh evidence and make credibility determinations." *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011)

(citation and internal alteration omitted). Wyant's opinions are essentially that "the physical evidence recovered at the incident scene . . . does not support the statements made by [Plaintiff]" and that the "location of physical evidence within [Plaintiff's] garage supports statements made by [Defendant] Navez." (R. 110-1, Wyant Report at 11.) The jury is able to evaluate the same physical evidence, witness statements, medical records, three-dimensional scans, and laboratory reports and draw the same conclusions about that evidence without Wyant's testimony. *Sullivan*, 2014 WL 3558690, at *6. The Court, therefore, concludes that Wyant's testimony fails to satisfy *Daubert*'s standards for admissibility. *See id.* Even if Wyant's testimony did satisfy *Daubert*, the Court also finds that the probative value of Wyant's testimony is substantially outweighed by a danger of unfair prejudice and confusion. FED. R. EVID. 403. Wyant does little more than summarize the physical evidence and offer his opinion that Defendants' testimony is more credible, which invites the jurors to substitute their own independent conclusions for Wyant's conclusions. *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006) ("In other words, they would have been induced to decide the case on an improper basis rather than on the evidence presented which is precisely why the evidence should have been excluded." (citation, internal quotation marks, and alteration omitted)). The Court, therefore, grants MIL #14 and excludes Wyant's opinions.

Moving on to Johnson, he opines on whether "the actions of the officers as reported/testified to in making contact with, arresting and using force regarding [Plaintiff] were in accord with nationally accepted law enforcement practices, standards[,] and training as well as Chicago Police Department policies governing force." (R. 100-2, Johnson Report at 8.) Johnson is a retired lieutenant colonel of the Illinois State Police Department, with more than 40 years of

experience in law enforcement. (*Id.*) He has been retained as an expert in more than 100 cases and has testified as an expert in several state and federal civil rights cases. (*Id.* at 8-9.)

The Court grants MIL #15 because Johnson's testimony also will not assist the jury, and its probative value, if any, is substantially outweighed by its significant risk of prejudice and confusion. *See Thompson*, 472 F.3d at 458; *Sullivan*, 2014 WL 3558690, at *6. "Expert testimony about police standards may appropriately assist the jury in resolving some excessive-force questions, but sometimes evidence of this type is unhelpful and thus irrelevant, particularly when no specialized knowledge is needed to determine whether the officer's conduct was objectively unreasonable." *United States v. Brown*, 871 F.3d 532, 534 (7th Cir. 2017); *see also Legg v. Pappas*, 383 F. App'x 547, 550 (7th Cir. 2010) ("In the exact same context—while granting a motion to exclude expert testimony about police practices in a Section 1983 excessive force case—we have held that the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." (citation and internal quotation marks omitted)).

The jury needs no specialized knowledge to determine whether the nature and extent of the force used by Defendants was excessive given the circumstances of this case. *See Brown*, 871 F.3d at 538 ("The everyday experience of lay jurors fully equips them to answer the reasonableness question when a case involves facts that people of common understanding can easily comprehend." (citation and internal quotation marks omitted)); *Stainback*, 569 F.3d at 772; *Sullivan*, 2014 WL 3558690, at *6. Consequently, the Court excludes Johnson's testimony as irrelevant, for failing to satisfy the requirements in *Daubert*, and because, even if Johnson's testimony was relevant, its probative value is substantially outweighed by a danger of prejudice or confusion. *See Brown*, 871 F.3d at 539 ("[A]s the district judge concluded, the admission of

[the expert's] testimony may have induced the jurors to defer to his conclusion rather than drawing their own."); *Thompson*, 472 F.3d at 457 ("In short, evidence about the specifics of the [Chicago police's policies] might very well have contributed to unfair prejudice and would have caused confusion regarding the plaintiffs' wrongful death claims."). Accordingly, the Court grants MIL #15 and bars Defendants from presenting Johnson's opinions at trial. For the same reasons, the Court grants MIL #7, (R. 110, Pl.'s Mot. at 9-11), which asks to exclude testimony from any Chicago police officer opining that Navez used reasonable force or complied with the policies, procedures, or use of force guidelines of the Chicago Police Department. *See United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) ("Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." (citation omitted)).[7]

## II.    Defendants' MILs

The Court now addresses Defendants' MILs, and, as a preliminary matter, grants those MILs to which Plaintiff does not object: MIL #10, which seeks to preclude references to previously dismissed claims in this case; MIL #16, which requests that the Court bar any evidence of damages for lost wages, diminished income, or any damages other than Plaintiff's

---

[7] Defendants are correct that a police officer's belief as to whether his or her own actions were consistent with police guidelines may be relevant if Plaintiff presents evidence supporting a request for punitive damages. Any such relevance, however, is far outweighed by a danger of unfair prejudice or confusion in this case and therefore inadmissible under Rule 403. *See Berg v. Culhane*, No. 9 C 5803, 2010 WL 3420081, at *2 (N.D. Ill. Aug. 27, 2010) ("[R]eferring to the police procedures but then asking the jury to consider them only in their consideration of punitive damages and qualified immunity would be far more prejudicial than probative."). Of course, if Plaintiff relies on police training materials, rules, policies, or regulations, then Defendants may ask the Court to revisit its ruling. *See Brinkley v. Santiago*, No. 11 C 6282, 2013 WL 12309671, at *4 (N.D. Ill. July 11, 2013) ("If defendants wish to rely on this material, [the plaintiff] will not be precluded from referencing other rules, policies, regulations or general orders to show that defendants failed to follow protocol.").

physical injury and medical and psychological treatment;[8] MIL #20, which asks the Court to

prohibit references to any discovery matter in front of the jury;[9] MIL #21, which seeks to bar

evidence from any witnesses, exhibits, or opinions not previously disclosed; MIL #24, which

requests that all non-party witnesses be excluded from the courtroom during opening statements

and during any testimony that is not their own; MIL #25, which asks the Court to prohibit

attorneys and parties from speaking with any witness about such witness' testimony while he or

she is still under oath; MIL #26, which seeks to preclude any argument or evidence concerning

the passage of time between the incident on February 24, 2011, and the trial in this case; and

MIL #29, which seeks to bar any reference to the parties' attempts to settle this case. (R. 112,

Defs.' Mot. at 22-24, 29-30, 35-36, 38-39, 40; R. 144, Pl.'s Resp. at 20, 28, 32, 34-35, 37.)

Consistent with the Court's ruling on Plaintiff's MIL #11, the Court denies Defendants'

MIL #9, which seeks to expressly allow the admission of Plaintiff's 1999 conviction for

attempted murder. (R. 112, Defs.' Mot. at 20-22.) Additionally, because the Court decided above

that evidence of the Chicago police's internal policies and procedures are irrelevant and will

result in a significant danger of prejudice and confusion, the Court grants Defendants' MIL #18,

which asks the Court to bar any evidence, testimony, or argument that any police officer violated

the Chicago Police Department's general orders, special orders, rules, or regulations. (*See*

R. 112, Defs.' Mot. at 33-35.) The Court addresses Defendants' remaining MILs below.

---

[8] (*See* R. 114, Pl.'s Resp. at 28 (noting that Plaintiff has received psychological treatment for PTSD in addition to his physical injuries).)

[9] The Court's decision to grant Defendants' MIL #20, however, will not bar evidence or argument related to the destruction of the wrench that Plaintiff was allegedly holding on the date of the incident, (R. 114, Pl.'s Resp. at 32), as this evidence is highly relevant and admissible. *See* FED. R. EVID. 401(a)-(b). Plaintiff represents that Defendants have informed him that the wrench was destroyed. (R. 114, Pl.'s Resp. at 32.)

## A.     MILs # 1 and 2: Collateral Estoppel

MIL # 1 asks the Court to prohibit Plaintiff from contesting the facts underlying his drug conviction. (*Id.* at 2-6.) The Court has already granted Plaintiff's MIL to exclude evidence related to his drug conviction, so Defendants' MIL #1 is denied as moot.

Turning to MIL #2, Defendants argue that a ruling in Plaintiff's criminal case on a motion to suppress collaterally estops him from contesting that: (1) Defendants' entry into his garage was constitutional; (2) Navez "announced his office as a police officer and that Plaintiff then turned and jumped around toward [Navez] with a silver object, which [Navez] believed was the barrel of a gun;" and (3) Defendant Navez was acting in "defense of aggravated assault immediately prior to the shooting and that this caused him to discharge his weapon." (R. 112, Defs.' Mot. at 6.) Under Illinois law,[10] collateral estoppel applies when: "(1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issue was necessary to the court's judgments, and (4) those issues are identical to issues raised in the subsequent suit." *Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013). Illinois courts, however, "will not apply collateral estoppel where there are multiple independent bases that could be sufficient to support the outcome in an earlier case[.]" *Id.* at 762 (citation and internal quotation marks omitted). When there is "any uncertainty regarding whether a specific factual finding was absolutely necessary" to the prior court's decision from

---

[10] The court issuing the ruling on Plaintiff's motion to suppress was an Illinois state court; therefore, Illinois law applies. *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) ("Federal courts must give state court judgments the same preclusive effect as a court in the rendering state, applying that state's law." (citation omitted)).

which a party seeks a preclusive effect, "issue preclusion does not apply."[11] *Id.* (citation and internal quotation marks omitted).

Plaintiff's motion to suppress in his criminal case sought to bar evidence of controlled substances found in Plaintiff's clothing at the hospital due to the lack of a search warrant and a lack of exigent circumstances at the time the police searched his clothing. (R. 106-5, Crim. Case Mot. to Suppress ¶¶ 9-15.) Though the court in Plaintiff's criminal case made certain statements about what happened prior to the search of Plaintiff's clothing, there is significant uncertainty as to whether those statements were actually necessary to decide whether the police lawfully searched Plaintiff's clothing at the hospital. Given this uncertainty, collateral estoppel does not apply and the Court denies MIL #2. *See Wells*, 707 F.3d at 762.

### B.    MILs # 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 19, 23, and 30: Irrelevant, Prejudicial, and Confusing Matters

Next, Defendants seek to exclude a number of matters that they argue are irrelevant or inadmissible under Rule 403 because their probative value is substantially outweighed by a danger of unfair prejudice or confusion of the issues. First, MIL #3 seeks to exclude any evidence, argument, or comments regarding Plaintiff's arrest for misdemeanor aggravated assault and the disposition of that charge. (R. 112, Defs.' Mot. at 9-11.) Defendants argue that any such evidence or argument is irrelevant, and that any probative value it may have is substantially outweighed by a danger of unfair prejudice or confusion of the issues. (*Id.*) The Court agrees. Plaintiff's arrest for aggravated assault does not factor into any of Plaintiff's claims, which instead implicate the time period covering Defendants' shooting of Plaintiff and unlawful entry into his home. (R. 66, Second Am. Compl. ¶¶ 51-89.) Plaintiff's arrest for aggravated assault is

---

[11] "Issue preclusion" is simply another term used for collateral estoppel. *Novak v. State Parkway Condo. Ass'n*, 141 F. Supp. 3d 901, 906 (N.D. Ill. 2015).

irrelevant because it occurred after the Defendants' alleged use of force and entry into Plaintiff's home,[12] (R. 108, Defs.' L.R. 56.1 Statement ¶ 27), and even if evidence related to Plaintiff's charges for aggravated assault had any probative value, that probative value would be substantially outweighed by unfair prejudice or confusion of the issues. *See* FED. R. EVID. 401, 402, 403. As noted above, the Court will exclude evidence of Plaintiff's arrest, charges, and conviction connected to the drugs found in his clothing at the hospital on February 24, 2011; therefore, if the Court allows evidence relating to the aggravated assault charge, it would significantly prejudice Defendants by only admitting facts related to charges against Plaintiff that were not pursued while excluding charges that led to a conviction against Plaintiff. The Court, therefore, grants MIL #3. *See Adams v. Szczerbinski*, 329 F. App'x 19, 23-24 (7th Cir. 2009) ("Evidence of acquittal in a criminal action is generally irrelevant and inadmissible in a civil case involving the same incident since it constitutes a negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt." (citation and internal quotation marks omitted)); *Brickhouse v. Redstone*, No. 3:12-cv-00593-DRH-PMF, 2014 WL 1453650, at *2 (S.D. Ill. Apr. 14, 2014) (granting motion in limine to exclude evidence of prosecutors' decision to not pursue charges against the plaintiff as irrelevant, overly prejudicial, and confusing).

MILs #4 and #15 request that the Court bar any argument or evidence of a "blue wall" or "code of silence" among police officers, or that Chicago police officers attempted to "cover up" police misconduct. (R. 112, Defs.' Mot. at 11-13, 28-29.) The Court agrees that evidence about a

---

[12] Plaintiff argues that the prosecutor's decision not to pursue this charge is relevant to his conspiracy claim, (R. 110, Pl.'s Mot. at 9), but he does not allege in the second amended complaint that there was a conspiracy by Defendants to conjure up aggravated assault charges—rather, he alleges the conspiracy was to deprive him of his constitutional rights by using excessive force and unlawfully searching and damaging his property. (R. 66, Second Am. Compl. ¶¶ 68-71.)

general code of silence among Chicago police officers would have little probative value that is substantially outweighed by such evidence's tendency to waste time, confuse the jury, or unfairly prejudice Defendants. *See Norton v. Schmitz*, No. 08 C 4365, 2011 WL 4984488, at *2 (N.D. Ill. May 27, 2011) ("[G]eneralized allegations—separate and apart from what may be true of the officers named as defendants here—are not helpful and are akin to impermissible propensity evidence." (citation omitted)). Plaintiff, however, may introduce evidence that Defendants *themselves* attempted to cover up their own alleged wrongdoing in this case. *See Christmas*, 691 F. Supp. 2d at 819 (barring evidence of a "generalized 'code of silence' " but permitting evidence "that the officers involved in the events underlying the complaint adhered to a 'code of silence' regarding the alleged violation of the plaintiffs' constitutional rights"). Accordingly, MILs #4 and #15 are granted in part and denied in part as stated above.

MIL #5 requests that the Court bar any evidence or argument regarding the insufficiency of any investigation of the shooting conducted by individuals not involved in the events that transpired on February 24, 2011. (R. 112, Defs.' Mot. at 13-15.) MIL #23 similarly seeks exclusion of any testimony, evidence, or argument regarding investigations by the Chicago Independent Police Review Authority ("IPRA") relating to Plaintiff's excessive force claim. (*Id.* at 37.) The Court agrees that this evidence's probative value is substantially outweighed by a danger of prejudice and confusion. *See* FED. R. EVID. 403.

To be clear, however, the Court will not exclude any reports or statements uncovered during an investigation if those reports or statements were made by Defendant police officers or any of the parties' witnesses offering a firsthand account of the events that took place on February 24, 2011. Any firsthand account of the February 24 incident or inconsistent statements made by witnesses or Defendant police officers uncovered in an investigation are relevant or

potentially useable for impeachment purposes, but attorneys should refer to any investigation as "another proceeding" if questioning a witness about such statements. *See* FED. R. EVID 613(b); *Norton*, 2011 WL 4984488, at *1 (excluding evidence of IPRA investigation, but permitting plaintiffs to impeach the defendants with statements they made to the IPRA); *Bruce v. City of Chicago*, No. 09 C 4837, 2011 WL 3471074, at *6 (N.D. Ill. July 29, 2011) (same). MILs #5 and #23 are therefore granted as set forth above. *See Patterson v. City of Chicago*, No. 15-CV-4139, 2017 WL 770991, at *12 (N.D. Ill. Feb. 28, 2017) ("Courts have excluded evidence that there was an investigation, the reasons for undertaking the investigation, or the findings and recommendations of IPRA or similar investigative bodies." (citation and internal quotation marks omitted)).

MIL #6 asks the Court to exclude evidence or argument that any non-Defendant engaged in misconduct. (R. 112, Defs.' Mot. at 15.) This motion is granted because any misconduct of a non-Defendant is irrelevant. FED. R. EVID. 401, 402.[13]

Next, Defendants argue in MIL #7 that the Court should preclude any evidence or argument that Navez should have used an alternative method of force. (R. 112, Defs.' Mot at 16-17.) "The failure to use an alternative, non-deadly force is not dispositive, although whether such an alternative existed is a factual question that may weigh on a trier of facts' ultimate determination of objective reasonableness." *Estate of Heenan ex rel. Heenan v. City of Madison*, 111 F. Supp. 3d 929, 942 (W.D. Wis. 2015). Any argument, however, that Navez should have, in hindsight, used a less intrusive means of force may be slightly probative and unduly prejudicial because the reasonableness of a police officer's actions is evaluated from the officer's

---

[13] Plaintiff does not object to this motion other than to argue that non-Defendants should be permitted to testify about the events that occurred on February 24, 2011, (R. 114, Pl.'s Resp. at 15-16), but MIL #6 does not seek to bar non-Defendants' recollection of the incident and instead is directed towards evidence of any non-Defendants' misconduct separate and apart from Defendants' misconduct.

perspective when the incident occurred—"not with 20/20 hindsight." *Deering v. Reich*, 183 F.3d

645, 650 (7th Cir. 1999); *see also Lampkins v. Jones*, No. 10 CV 7993, 2014 WL 12621565, at

*3 (N.D. Ill. Nov. 4, 2014) ("Any argument that the Defendant Officers should have or could

have taken alternative measures is not the standard by which their actions are to be judged.").

Thus, because the admissibility of evidence regarding alternative methods of force depends on

the type of evidence or argument Plaintiff seeks to present at trial and whether that evidence goes

to Defendants' action at the time of the incident rather than any hindsight evaluation of

Defendants' actions, the Court will reserve ruling on MIL #7.

In MIL #11, Defendants seek to exclude any argument or evidence that police officers

falsely testified in Plaintiff's criminal proceedings. (R. 112, Defs.' Mot. at 24-25.) The Court

reserves ruling on this motion without knowing the exact false statements Plaintiff seeks to

introduce, because evidence of a witness providing false testimony may be admissible to attack

that witness' character for truthfulness or to impeach Defendants' witnesses with prior

inconsistent statements *See* FED. R. EVID 801(d)(1)(a); *Battle v. O'Shaughnessy*, No. 11 C 1138,

2012 WL 4754747, at *3 (N.D. Ill. Oct. 4, 2012) ("Rule 608(b) allows impeachment of witness

by questioning about specific instances of conduct for the purpose of attacking the witness's

character for truthfulness. . . . Acts of deceit usually raise this doubt, and an instance of

misconduct need not be punishable as a crime in order to reflect the witness's character for

truthfulness.").

Next, Defendants request in MIL #12 that the Court bar any evidence concerning

damages suffered by, or police misconduct affecting, Plaintiff's fiancée. (R. 112, Defs.' Mot. at

25-26.) MIL #12 is granted because Plaintiff's fiancée is no longer a party to this suit, such

evidence has no relevance to Plaintiff's claims, and even if it did, any probative value of this

evidence is substantially outweighed by a danger of unfair prejudice and confusion. *See* FED. R. EVID. 401, 402, 403. MIL #13, which seeks exclusion of evidence or argument regarding how the Chicago Police Department generally trains, monitors, controls, or disciplines its officers, (R. 112, Defs.' Mot. at 26-27), is granted for the same reasons—that evidence is irrelevant, highly prejudicial, and likely to confuse the jury. *See Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *12 (N.D. Ill. June 12, 2015) (excluding as irrelevant and prejudicial such evidence when there was no Section 1983 claim against a municipality for promulgating policies that violated the plaintiff's civil rights). The Court likewise grants MIL #14, (R. 112, Defs.' Mot. at 27-28), because any evidence or argument concerning police misconduct in other cases not involving Plaintiff is irrelevant and unfairly prejudicial. FED. R. EVID. 401, 402, 403; *Gowder v. Bucki*, No. 13 C 1834, 2013 WL 6182964, at *4 (N.D. Ill. Nov. 26, 2013) (granting motion in limine to exclude evidence of alleged misconduct by non-defendant police officers).

In MIL #19, Defendants argue that the Court should bar any argument that Defendants' alleged misconduct was racially motivated. (R. 112, Defs.' Mot. at 35.) This motion is denied without prejudice because the Court cannot say at this point that Plaintiff should be completely foreclosed from arguing that Defendants' conduct was racially motivated. *See Patterson*, 2017 WL 770991, at *7 (granting motion in limine to exclude testimony suggesting police's conduct was racially motivated because the parties agreed there was no evidence of racially motivated conduct, but allowing the plaintiff to revisit the court's ruling if evidence of racial motivation was presented during trial). The Court is aware that racial motivation goes to the subjective belief of the officer and therefore is not relevant to whether Defendants' conduct was "objectively reasonable," but racial animus could be relevant to a request for punitive damages. *See Knight v. Kerstein*, 836 F. Supp. 2d 719, 726 (N.D. Ill. 2011) ("Punitive damages are

appropriate when the defendant acted wantonly and willfully, or was motivated in his actions by ill will or a desire to injure." (citation omitted)); *Akbar v. City of Chicago*, No. 06 C 3685, 2009 WL 3335364, at *1 (N.D. Ill. Oct. 14, 2009) (observing that a claim for punitive damages may put a Section 1983 defendant's intent at issue). If Plaintiff wishes to raise any evidence or argument of racial motivation, however, he must first present it to the Court outside of the jury's presence.

Finally, in MIL #30, Defendants ask the Court to exclude any evidence or argument that Chicago police personnel are being paid to appear in Court. (R. 112, Defs.' Mot. at 41.) Plaintiff largely agrees to this MIL except for testimony that City of Chicago employee witnesses spoke to an attorney in preparation for trial, (R. 114, Pl.'s Resp. at 37-38). *See* FED. R. EVID. 401, 402. Accordingly, MIL #30 is granted, except to the extent it seeks to bar testimony that a City of Chicago employee spoke to an attorney in preparation for trial because Defendants do not explain how such evidence will prejudice them. *See Berrettini*, 2015 WL 4247776, at *1.

### C.    MIL #8: Prior Acts

Defendants also ask the Court to bar reference to specific instances of misconduct or the Defendant officers' uses of force before or after the incident in question. (R. 112, Defs.' Mot. at 17-20.) "Under Rule 404(b), evidence of other crimes, wrongs, or acts is inadmissible to show propensity, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or other relevant, nonpropensity purposes." *Duran v. Town of Cicero*, 653 F.3d 632, 644-45 (7th Cir. 2011) (citation, internal quotation marks, and alteration omitted). The admissibility of prior acts under Rule 404(b) turns on an evaluation of the following factors:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that

the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

*Id.* (citation omitted). Plaintiff does not offer any specific evidence of prior misconduct he believes is relevant, but instead argues that MIL #8 is overly broad. (R. 114, Pl.'s Resp. at 17-18.) Applying the factors above, the Court finds that evidence of prior misconduct would not be used for any reason other than to show Defendants' propensity to commit the misconduct alleged in this case. The Court also finds that the prejudicial effect of any evidence of Defendants' prior acts substantially outweighs any possible probative value of such evidence. Because introduction of Defendants' unrelated misconduct risks "creating a sideshow and sending the trial off track," the Court grants MIL #8. *See Duran*, 653 F.3d at 645.

### D. MIL #17: Hearsay and Opinion Testimony Related to Plaintiff's Medical Condition

MIL #17 seeks exclusion of any "medical" testimony from Plaintiff regarding his injuries. (R. 112, Mot. at 30-33.) More specifically, Defendants argue that Plaintiff should not be permitted to testify about what happened during the surgery to repair his liver or what physicians told Plaintiff regarding his medical condition. (*Id.* at 30-32.) The Court denies MIL #17 without prejudice, because whether Plaintiff's testimony concerning his medical condition is improper opinion testimony or hearsay will depend on the context of the testimony and the purpose for which such testimony is used. *See Alexian Bros. Health Providers Ass'n, Inc. v. Humana Health Plan, Inc.*, 608 F. Supp. 2d 1018, 1021 (N.D. Ill. 2009) (noting that "[e]vidence should be excluded in limine only when it is clearly inadmissible on all potential grounds," otherwise, evidentiary rulings should be deferred until trial); *Marcellino v. Fed. Express Corp.*, No. 09 C 903, 2010 WL 4286379, at *1 (N.D. Ill. Oct. 20, 2010) (denying motion to exclude hearsay

evidence due to the possibility that such evidence "may become admissible for other purposes at trial").

### E. MIL #22: Punitive Damages

Defendants ask the Court to exclude any argument or evidence that the jury should "send a message" to, or punish, the City of Chicago with its verdict in this case. (R. 112, Defs.' Mot. at 36-37.) Plaintiff does not object, but argues that he should be able to argue that the jury should "send a message" to or punish the individual police officer Defendants. (R. 114, Pl.'s Resp. at 33.) Defendant, however, only seeks to bar any evidence or argument as to the City of Chicago and not individual police officer Defendants. (R. 112. Defs.' Mot. at 36-37.) Accordingly, MIL #22 is granted.

### F. MILs # 27 and 28: Indemnification

MIL #27 asks the Court to prohibit any reference to Defendants' attorneys as "corporation counsel," "special assistant corporation counsel," "city attorneys," or any other designation suggesting that the City of Chicago will indemnify individual police officer Defendants. (R. 112, Defs.' Mot. at 39.) Similarly, in MIL #28, Defendants seek to bar any evidence or argument that the City of Chicago will indemnify the individual police officer Defendants for compensatory damages. (*Id.* at 39-40.) The Court agrees that evidence or argument about indemnification would unfairly prejudice Defendants by suggesting that there are "deep pockets" available to pay any judgment that is awarded against them. *Jones v. City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *4 (N.D. Ill. Jan. 31, 2017) ("In general, courts bar evidence of indemnification because it may encourage juries to inflate compensatory damages awards."). As noted above in the Court's ruling on Plaintiff's MIL #1, however, evidence or argument concerning indemnification may be permitted if Defendants open the door

to such evidence by arguing or adducing evidence of poverty. *See Gonzalez*, 2015 WL 3671641, at *7. MILs # 27 and 28, therefore, are conditionally granted as stated herein.

## CONCLUSION

For these reasons, the parties' motions in limine (R. 110; R. 112) are GRANTED in part and DENIED in part as stated herein. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to trial.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: April 5, 2018**

28